# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TREJOS HERMANOS SUCESORES S.A.,

Plaintiff,

v.

VERIZON COMMUNICATIONS, INC.,

Defendant.

Case No. 1:21-CV-08928 (RA)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTFF'S
## MOTION FOR SUMMARY JUDGMENT

WILLIAMS & CONNOLLY LLP

Ana C. Reyes (admission papers forthcoming)
Benjamin W. Graham (Bar No. BG1195)
650 Fifth Avenue, Suite 1500
New York, NY 10019
Tel.: (202) 434-5000
Fax: (202) 434-5029
bgraham@wc.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.    The Parties. .................................................................................................. 2

    B.    Relationship Between the Parties............................................................... 3

    C.    Verizon LLC Breaches Its Contract with the Institute............................. 4

    D.    Verizon LLC Wrongfully Terminates the Contract with Trejos Hermanos. .......... 5

    E.    The Tribunal Contencioso Holds Verizon Inc. Jointly and Severally Liable. ........ 6

    F.    The Tribunal Contencioso Awards Damages to Trejos Hermanos. ...................... 6

    G.    Verizon Inc. Appeals the Judgment to the Supreme Court of Justice. ................... 9

LEGAL STANDARD.................................................................................................... 11

ARGUMENT .................................................................................................................. 12

I.    TREJOS HERMANOS IS ENTITLED TO SUMMARY JUDGMENT. ............................. 12

    A.    The Judgement Is Final and Conclusive. ............................................... 13

    B.    No Grounds for Non-Recognition Exist. ............................................... 15

    C.    None of the Discretionary Grounds for Non-Enforcement Applies. .................... 18

CONCLUSION............................................................................................................... 20

## TABLE OF AUTHORITIES

*Abu Dhabi Commercial Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*,
   986 N.Y.S.2d 454 (1st Dep't 2014) ...................................................................11, 12

*Atl. Ship Supply, Inc. v. M/V Lucy*,
   392 F. Supp. 179 (M.D. Fla. 1975).............................................................................15

*Borja v. Dole Food Co., Inc.*,
   2002 WL 31757780 (N.D. Tex. Nov. 29, 2002)........................................................15

*Bridgeway Corp. v. Citibank*,
   45 F. Supp. 2d 276 (S.D.N.Y. 1999)..........................................................................15

*Canadian Imperial Bank of Com. v. Saxony Carpet Co., Inc.*,
   899 F. Supp. 1248, 1254 (S.D.N.Y. 1995) .................................................................12

*Chevron Corp. v. Naranjo*,
   667 F.3d 232, 239 (2d Cir. 2012) ...............................................................................12

*City of Almaty v. Ablyazov*,
   278 F. Supp. 3d 776, 803 (S.D.N.Y. 2017) ................................................................11

*Canales Martinez v. Dow Chem. Co.*,
   219 F. Supp. 2d 719 (E.D. La. 2002)..........................................................................15

*CDR Creances, S.A.S. v. Cohen*,
   23 Misc. 3d 1102(A) (Sup. Ct., N.Y. Cnty. 2009)....................................................14

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. NV*,
   100 N.Y.2d 215 (2003) ........................................................................................12, 14

*Dresdner Bank AG v. Haque*,
   161 F. Supp. 2d 259, 264 (S.D.N.Y. 2001) ...............................................................12

*Dunster Properties Ltd. v. Roc Apparel Group LLC*,
   No. 0600895/2007, 2007 WL 4476792 (Sup. Ct., N.Y. Cnty. Dec. 17, 2007).........13, 14

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*,
   470 F. Supp. 610 (S.D.N.Y. 1979) .............................................................................16

*Genesi v. Int'l Portfolio, Inc.*,
   No. 12 Civ. 5462(RA), 2012 WL 5964391, at *2 (S.D.N.Y. Nov. 29, 2012) ...........11

*Griffith v. Gonzales-Alpizar*,
   421 P.3d 282 (Nev. 2018).............................................................................................15

*Hilton v. Guyot*,
   159 U.S. 113, 163-64 (1895) ......................................................................................12

ii

*ICC Chem. Corp. v. TCL Indus. (Malaysia) SDN*,
206 F. App'x 68 (2d Cir. 2006) ..............................................................16, 17, 18, 19

*In re B-E Holdings, Inc.*,
228 B.R. 414 (E.D. Wis. Bankr. 1999) ..................................................................14

*Interman Indus. Prods., Ltd. v. R.S.M Electron Power, Inc.*,
37 N.Y.2d 151 (1975) ............................................................................................11

*John Galliano, SA. v. Stallion, Inc.*,
15 N.Y.3d 75 (2010) ..............................................................................................12

*Laminoirs-Trefileries-Cableries de Lens, S. A. v. Southwire Co.*,
484 F. Supp. 1063 (N.D. Ga. 1980) ......................................................................14

*Mailänder Druckmaschinenfabrik GmbH & Co. K. G. v. Isenschmid Corp.*,
88 A.D.2d 654 (2nd Dep't 1982) ..........................................................................11

*McLane v. Marriott Inter., Inc.*,
960 F. Supp. 2d 1351 (S.D. Fla. 2013) ..................................................................15

*Miller v. Steloff*,
686 F. Supp. 91, 93 (S.D.N.Y. 1988).....................................................................11

*Obra Pia Ltd. V. Seagrape Invs. LLC*,
No. 19-CV-7840(RA), 2020 WL 5751195, at *18 (S.D.N.Y. Sept. 25, 2020) .....................12

*Pariente v. Scott Meredith Literary Agency, Inc.*,
771 F. Supp. 609 (S.D.N.Y. 1991) ........................................................................14

*Priscilla v. EFT Holdings, Inc.*,
2016 WL 6026766 (Sup. Ct., N.Y. Cty. Oct. 5, 2016) ..........................................12

*Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co.*,
895 F. Supp. 1197 (M.D. Fla. 1995).......................................................................15

*Really Useful Grp. v. Option Clause Entm't LLC*,
2016 WL 3485381 (Sup. Ct., N.Y. Cty. June 23, 2016).........................................12

*S.B. v. W.A.*,
38 Misc.3d 780, (Sup. Ct., Westchester Cnty. 2012).............................................18

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
406 F. Supp. 2d 274 (S.D.N.Y. 2005).....................................................................18

*S.C. Chimexim SA. v. Velco Enters. Ltd*,
36 F. Supp. 2d 206 (S.D.N.Y. 1999).................................................................12, 17

*Sea Trade Mar. Corp. v. Stylianos Coutsodontis*,
No. 653407/2011, 2014 WL 4787290 ...................................................................12

*Servipronto De El Salvador, S.A. v. McDonald's Corp.*,
837 F. App'x 817 (2d Cir. 2020) ..........................................................................13

*Shipcraft v. Arms Corp. of the Phil., Inc.*,
No. 150651/2012, 2013 WL 649415 (Sup. Ct., N.Y. Cnty. Feb. 19, 2013) ...........13

*Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*,
957 N.Y.S.2d 602 (Sup. Ct., N.Y. Cnty. 2012) .....................................................12

*Sun Forest Corp. v. Shvili*,
152 F. Supp. 2d 367, 390 (S.D.N.Y. 2001) ...........................................................11

*Sung Hwan Co. v. Rite Aid Corp.*, 841 N.Y.S.2d 828 (2007)
(unreported table decision), 2007 WL 1815995, at *3 .........................................13

*Thomas & Agnes Carvel Found. v. Carvel*,
736 F. Supp. 2d 730, 755 (S.D.N.Y. 2010) ...........................................................12

*UBS AG, London Branch v. Greka Integrated, Inc.*,
19 Civ. 10786(LLS), 2020 WL 1957530, at *3 (S.D.N.Y. Apr. 23, 2020) ............11

*United States v. Ruiz*,
536 U.S. 622 (2002) ...............................................................................................17

*Valley Nat'l Bank v. Oxygen Unlimited LLC*,
No. 10 Civ. 5815(GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) ......11

**Statutes and Rules**

28 U.S.C. § 1332 ...........................................................................................................11

28 U.S.C. § 1441 ...........................................................................................................11

28 U.S.C. § 1446 ...........................................................................................................11

CPLR § 451 ...................................................................................................................13

CPLR § 3213 ............................................................................................................11, 13

CPLR § 5302 ........................................................................................................1, 11, 12

CPLR § 5303 ...........................................................................................................1, 12

CPLR § 5303 ...................................................................................................................12

CPLR § 5304 ......................................................................................1, 14, 16, 17, 18

iv

# INTRODUCTION

Plaintiff Trejos Hermanos Sucesores S.A. ("Trejos Hermanos") seeks the domestication and enforcement of a foreign country money judgment (the "Judgment") entered against Verizon Communications, Inc. ("Verizon Inc.") in Costa Rica by the Tribunal Contencioso Administrativo y Civil de Hacienda (the "Tribunal Contencioso"). The Judgment awarded damages in the principal amount USD 51,355,812, along with certain statutory adjustments. The Judgment was entered after trial by the Tribunal Contencioso and upheld on appeal by the First Chamber of the Supreme Court of Justice, the highest appellate court in Costa Rica. The Judgment satisfies the requirements of CPLR §§ 5302 and 5303 because it grants the "recovery of a sum of money" and is "final, conclusive and enforceable" in Costa Rica.

None of the grounds for non-recognition under CPLR § 5304(a) apply. *First*, Costa Rica's judicial system provides for the impartial administration of justice and comports with notions of due process. *See* CPLR § 5304(a)(1). *Second*, the Tribunal Contencioso had "personal jurisdiction over the defendant," which voluntarily appeared in Costa Rica and litigated the claims through trial and appeal. CPLR § 5304(a)(2). *Third*, the Tribunal Contencioso had jurisdiction over the subject matter. *See* CPLR § 5304(a)(3). Verizon Inc. challenged subject-matter jurisdiction before both the trial court and the appellate court, losing in both forums. That issue is settled, and Verizon Inc. is collaterally estopped from challenging the Court's subject-matter jurisdiction here. Nor could Verizon Inc. plausibly establish any discretionary basis on which the Court could refuse recognition. *See* CPLR § 5304(b).

Plaintiff is thus entitled to judgment as a matter of law and respectfully requests that the Court grant summary judgment in its favor.

## STATEMENT OF FACTS

As described below, this case involves a public printing contract in Costa Rica.  In 2000, a subsidiary of Verizon Inc. contracted with the Costa Rican Institute of Electricity (the "Institute") for the printing and distribution of telephone directories across the country.  To perform that contract, Verizon Inc.'s subsidiary subcontracted its printing obligations to Trejos Hermanos.  But in 2004, Verizon Inc.'s subsidiary breached its contract with the Institute and attempted unilaterally to change the format and content of the directories for the following year. When the subsidiary refused to remedy its breach, the Institute terminated the contract for cause. Verizon Inc.'s subsidiary then defaulted on its obligations to Trejos Hermanos and terminated the subcontract.  Trejos Hermanos filed suit against the Institute, Verizon Inc., and its subsidiary before the Tribunal Contencioso.  Verizon Inc. appeared and defended the suit.  Following trial, the Tribunal Contencioso entered judgment in favor of Trejos Hermanos in the amount of USD 51,355,812, along with certain statutory adjustments (for indexation, interest, and legal fees and costs).  Verizon Inc. appealed the judgment, but the Supreme Court of Justice rejected its arguments (and its motion for reconsideration) and upheld the Judgment.

### A.     The Parties.

This matter involves a century-old, family-run business, Trejos Hermanos.  Founded in 1912 by four brothers, the company grew from a small printing press to a large printing house that distributed materials throughout the Caribbean and parts of Miami.  *See* Laclé Aff. ¶ 2; Laclé Ex. A, Complaint at 6.  Trejos Hermanos was continuously owned and run by the Trejos family, most recently by Alvaro Trejos Fonseca, the great grandson of an original founder.  The family business ended with him.  The termination of the contract central to the Costa Rican dispute made Trejos Hermanos insolvent.

Verizon Inc. is a company incorporated in the State of Delaware and headquartered in New York City.

### B. Relationship Between the Parties

On February 28, 2002, Trejos Hermanos entered into a "Master Purchase Agreement" with an entity named General Telephone Directory Company C por A. Laclé Ex. B, Judgment at 3. On May 16, 2002, Trejos Hermanos's counterparty gave notice that it had changed its name to Verizon Information Service Costa Rica LLC ("Verizon LLC"). *Id.* at 20. That name change was the result of an upstream corporate restructuring. On June 30, 2000, Bell Atlantic Corp. merged with GTE Corp., and the resulting company became Verizon Communications Inc. (the defendant in the present suit). *See* Laclé Ex. F, SEC Filing; Laclé Ex. G, Verizon Website; Laclé Ex. B, Judgment at 20. At the time of the events underlying this lawsuit, Verizon Inc. was the parent of Trejos Hermanos's contractual counterparty, Verizon LLC.

The Master Purchase Agreement between Trejos Hermanos and Verizon LLC related to another contract with the Institute. *See* Laclé Ex. B, Judgment at 37 (describing the subcontracting relationship between Trejos Hermanos and Verizon LLC, on the one hand, and the Verizon Group and the Institute, on the other). In 1999, the Institute issued a public tender for the provision of telephone directories in Costa Rica. *Id.* at 16. The bidding terms provided that if a bidder is part of a larger business group or structured beneath a holding company, it must submit financial statements, "in which case the business group would be jointly and severally liable with the bidder for all contractual obligations." *Id.*

On August 10, 1999, a group of companies that referred to itself as the GTE Consortium submitted a bid to participate in the public tender. *Id.* The GTE Consortium was composed of three entities: GTE Information Services Incorporated, GTE Directories Corporation, and General Telephone Directory Company C por A. *Id.* at 59. As the bidding terms required, the

GTE entities submitted their financial statements together and accepted joint and several liability for all contractual obligations. *Id.* at 16. The ultimate parent company, GTE Corp., also executed a separate guaranty of the GTE Consortium's obligations, pursuant to which it agreed to be jointly liable for the obligations of the bidding entities. *See* Laclé Ex. E, GTE Guaranty. The GTE Consortium won the tender and, on March 10, 2000, executed a contract with the Institute, which was styled as a "Contract for Publishing of the Telephone Guide and Development and Implementation of Information Services between [the Institute] and GTE" (the "Public Contract"). Laclé Ex. B, Judgment at 17.

As discussed, the GTE Consortium was part of a merger and corporate restructuring in June 2000. GTE Corp., the parent that had guaranteed the GTE Consortium's performance, merged with Bell Atlantic Corp. and became Verizon Inc. Thereafter, the subsidiaries that had contracted with the Institute changed their names: GTE Information Services, Inc. became Verizon Information Services, Inc., and General Telephone Directory Company C por A became Verizon Information Service Costa Rica, LLC. *Id.* at 18. After the corporate restructuring, the Verizon entities "issued Statements of Continued Commitment" to the Institute "with respect to the rights and obligations set forth in the consortium agreement of August 9, 1999; in the bid submitted to [the Institute] by GTE Consortium on August 26, 1999; and in the contract executed by and between ICE and GTE Consortium on March 10, 2000." *Id.*

### C. Verizon LLC Breaches Its Contract with the Institute.

In 2004, Verizon LLC sought unilaterally to change the format and content of the telephone directories it had contracted to deliver in Costa Rica. *See* Laclé Ex. B, Judgment at 19–21 (noting that Verizon LLC wanted to exclude certain provinces and cities from its listings). The Institute objected to Verizon LLC's attempt "to unilaterally amend the contractual conditions agreed upon[.]" *Id.* at 20. When Verizon LLC declined to remedy its breach, the

4

Institute initiated a formal procedure for termination of the contract on December 14, 2004. *Id.* at 21. The procedure concluded on June 1, 2005 with the termination of the Public Contract between Verizon LLC and the Institute. *Id.*

**D.** **Verizon LLC Wrongfully Terminates the Contract with Trejos Hermanos.**

On September 2, 2005, Verizon LLC informed Trejos Hermanos that it was terminating the Master Purchase Agreement. Laclé Ex. B, Judgment at 23. The Tribunal Contencioso determined that "when terminating its contractual relationship with the plaintiff company, [Verizon LLC] falsely indicated to it that the party responsible for the contractual breach was [the Institute]" and that Verizon LLC thereby "committed a willful breach" of the Master Purchase Agreement. *Id.* at 43. After reviewing the evidence presented at trial, the Tribunal Contencioso concluded "from the proven facts," that Verizon LLC acted with an "awareness and willingness . . . to breach the contractual relationship with [the Institute] . . . , know[ing] that such breach of contract would openly affect its relationship with the plaintiff." *Id.* at 47.

Under Costa Rican law, Verizon LLC's willful misconduct rendered "ineffective[] any agreed exemption or limitation of liability" in the contract and resulted in Verizon LLC's liability for consequential damages. *Id.* at 47, 49 (citing Article 701 of the Costa Rican Civil Code). Having found that Verizon LLC committed a willful breach, the Tribunal Contencioso held it liable for Trejos Hermanos's damages. Verizon LLC's "malicious breach" worked "to the detriment of the plaintiff company" Trejos Hermanos and "therefore generates contractual liability" for any consequential damages. *Id.* at 54–55. Ultimately, the Tribunal Contencioso found it probable that Trejos Hermanos would have remained in business but for the unlawful termination. *Id.* at 69.

### E. The Tribunal Contencioso Holds Verizon Inc. Jointly and Severally Liable.

Under Costa Rican law, liability adopts a practical rather than a formalistic approach. Liability is not limited by corporate formalities but rather encompasses any "economic interest group" that exists when "a group of individuals or legal entities maintain common links and interests and coordinate their activities to achieve a certain common objective" such that "there is control, autonomy and unity of behavior in the market." Laclé Ex. B, Judgment at 62. Noting the initial bid on behalf of the "GTE Consortium," the Tribunal Contencioso concluded that Verizon Inc., as the corporate successor to GTE Corp., was part of the same economic group as the three subsidiaries that had contracted with the Institute. *Id.* at 56. The Tribunal Contencioso concluded under Costa Rican law that "the existence of the economic interest group binds [Verizon Inc.] in matters of liability." *Id.* at 58. The Judgment therefore holds Verizon Inc. jointly and severally liable with Verizon LLC. *Id.*

### F. The Tribunal Contencioso Awards Damages to Trejos Hermanos.

Verizon LLC's wrongful termination of the contract forced Trejos Hermanos to shutter operations. Trejos Hermanos took out substantial loans to lease new warehouses and purchase new equipment that could accommodate Verizon LLC's specific printing specifications. Laclé Ex. B, Judgment at 63–68. It also made extensive investments in working capital to obtain the necessary manpower and inventory to handle the expected business. After termination, Trejos Hermanos was left with machinery and inventory that it could not use. Mr. Trejos Fonseca attempted to save the family business. But he could not. The loans taken out in reliance on the contract and the loss of expected operational cash ultimately made Trejos Hermanos insolvent.

Trejos Hermanos claimed several categories of damages in its complaint before the Tribunal Contencioso. *See id.* at 70–71. Those claims generally included the sunk costs that Trejos Hermanos spent in reliance on the contract, the lost profits that it expected under the

contract, and lost opportunity costs due to the interruption of its operations. *Id.* The Tribunal Contencioso considered each claim of damages in detail, based on the expert testimony prepared by a licensed "Professional in Economic Sciences" and submitted by Trejos Hermanos for examination by Verizon Inc. *Id.* at 71. The Tribunal Contencioso ultimately accepted and entered judgment on damages in the principal amount of USD 51,355,812, along with statutory adjustments for indexation, interest, and legal fees.

The Tribunal Contencioso appointed an independent "judicial expert Ramón Humberto Romero Rodríguez, Certified Public Accountant and Expert Actuary," to test and verify the evidence submitted by Trejos Hermanos. *Id.* at 84. Mr. Rodríguez's figures agreed with those of Trejos Hermanos's expert, and Verizon Inc. "did not object to or provide evidence that disproved the methodology or the estimated dates for future value of the losses incurred, the interest rates applied, projections, calculations, methodologies or conclusions obtained." *Id.* at 76. As a result, the Tribunal Contencioso found no basis in the evidence to challenge the damages figures above. *Id.*[1]

The principal figure of damages includes six categories, which Trejos Hermanos pleaded and established at trial:

a.      USD 2,582,156 for the costs of investment in machinery, *id.* at 72;

b.      USD 2,860,696 for the costs of increased inventories, *id.* at 72;

c.      USD 983,825 for interest paid on financing the investment and inventory, *id.* at 74;

d.      USD 8,806,872 for lost operating cash flows under the Master Purchase Agreement between 2004 and 2013, *id.* at 73;

---

[1] Verizon Inc. had the opportunity to retain its own expert and present evidence to contest Trejos Hermanos' damages figures, but declined to do so.

e. USD 7,237,068 for certain losses between 2004 and 2007, *id.* at 73; and

f. USD 28,885,195 for interruption of operations, i.e., the future amounts on a discount-cash-flow basis that Trejos Hermanos failed to earn when its main client, Verizon LLC, breached its agreement and caused the termination of Trejos Hermanos's operations, *id.* at 74–75.

The Tribunal Contencioso did not award Trejos Hermanos every category of damage it sought. To the contrary, the Tribunal Contencioso denied Trejos Hermanos its claims for (i) USD 7,912,999 corresponding to lost cash flows for the printing of directories in the Dominican Republic between 2004 and 2013, *see id.* at 5, 76; and (ii) moral damages in the amount of USD 5,000,000, *id.* at 5, 77–89.

Finally, the Tribunal Contencioso applied statutory adjustments to account for indexation, interest, and legal costs. The adjustments include three components. *First*, the Tribunal Contencioso ordered that "[t]he amounts subject to the judgment are indexed in order to update the purchasing power of the amounts indicated[.]" *Id.* at 90. In Costa Rican practice, damages calculations are submitted with the filing of the complaint. Laclé Aff. ¶ 4. In this case, that meant Trejos Hermanos submitted its expert analysis in 2008, using a cut-off date of August 31, 2008. *Id.*; *see also* Laclé Ex. A, Complaint at 52; Laclé Ex. B, Judgment at 72–75. The indexing adjustment accounts for inflation and adjusts the figures to present-day dollar figures. Laclé Aff. ¶ 5. *Second*, the Tribunal Contencioso ordered that "the legal interest established in Article 1163 of the Civil Code must be applied to . . . the net profit component" of the award from the date of their calculation on August 30, 2008 "until they are fully paid." Laclé Ex. B, Judgment at 90. In American practice, this is akin to routine pre-judgment interest. *Third*, Verizon Inc. was ordered

to pay Trejos Hermanos's legal costs, as provided by Article 193 of the Code of Contentious Administrative Procedure.  *Id.* at 91.

These amounts are readily calculable.  For example, using a calculation date of October 15, 2021, indexing brings Trejos Hermanos's damages figure to USD 76,432,427; pre-judgment interest on net profits increases that figure by USD 7,089,284; and statutory legal fees and costs amount to USD 10,449,155.  *See* Grant Thornton Report at 1.  Thus, the final figure of damages owed to Trejos Hermanos as of October 15, 2021 is USD 93,970,866.  *Id.*  Under the Judgment, the indexation and pre-judgment interest will continue to increase until the date on which the Court domesticates the judgment (at which point New York post-judgment interest will apply).

### G.	Verizon Inc. Appeals the Judgment to the Supreme Court of Justice.

The Tribunal Contencioso entered judgment on July 19, 2017.  Verizon Inc. timely filed an appeal to the Supreme Court of Justice on September 4, 2017, arguing several grounds of error.[2]  The Supreme Court of Justice heard argument on the appeal and rendered its decision on June 25, 2020.  *See* Laclé Ex. C, Appellate Decision.  Two of Verizon Inc.'s grounds are potentially relevant to this enforcement action under CPLR Article 53:

*First*, Verizon Inc. argued that the Master Purchase Agreement between Verizon LLC and Trejos Hermanos contained an arbitration clause that divested the Tribunal Contencioso of subject-matter jurisdiction.  *See* Laclé Ex. C, Appellate Decision at 3.  The Supreme Court of Justice rejected this argument, relying on a settled line of precedent and holding that the Tribunal Contencioso had subject-matter jurisdiction over these claims due to their relationship to the Institute, a public entity.  *Id.*  In terms of U.S. jurisprudence, the Tribunal Contencioso had non-

---

[2]  In Costa Rican practice, this is called a *casacion*, a procedure that addresses legal issues but does not reconsider factual findings.  For ease of reference and comparison to U.S. procedure, we refer to it as an "appeal."

delegable jurisdiction over administrative contracts involving public entities (e.g., the Institute) and related claims.

*Second*, Verizon Inc. argued that the Tribunal Contencioso also lacked subject-matter jurisdiction because the issues decided were matters of private law, not public law.  *Id.* at 3–4. The Supreme Court of Justice also rejected this argument, holding that the Tribunal Contencioso's ruling turned on "the termination of the administrative contract" with the Institute and that the Master Purchase Agreement between Verizon LLC and Trejos Hermanos was a "subcontract[] for the execution of the contract" with the Institute.  *Id.* at 3.  Thus, the Tribunal Contencioso acted within its competence.

Verizon Inc. also raised several other grounds for appeal, covering the interpretation of applicable law, the temporal scope of the damages calculation, the effect of contractual liability exclusions, the nature of subcontracting under Costa Rican law, the admissibility of certain expert testimony, the application of a statute of limitations, and a general objection to the trial court's assessment of the evidence.  *See generally* Laclé Ex. C, Appellate Decision at 4–6.  The Supreme Court of Justice considered and rejected each ground on appeal.

Following the Supreme Court of Justice's decision, Verizon Inc. filed a motion for clarification, which sought to reargue or urge reconsideration of the decision.  Verizon Inc. criticized the Supreme Court of Justice's analysis as "cursory," impoverished, "weak," and "legally invalid."  Laclé Ex. D, 2d Appellate Decision at 2.  The Supreme Court of Justice questioned Verizon Inc.'s conduct.  The rules of civil procedure did not permit Verizon Inc. a second appeal on the matter, and the court's determinations following an adversary proceeding "produces *res judicata* material."  *Id.* at 9.  Looking past the procedural violations of Verizon Inc.'s second appeal, the Supreme Court of Justice found that the merits were equally lacking: Verizon Inc. did not allege any substantive error of law in the Supreme Court's initial opinion.

### H. Removal to Federal Court.

On October 26, 2021, Trejos Hermanos filed a motion for Summary Judgment in Lieu of Complaint in the Supreme Court of the State of New York, New York County (Index No. 656161/2021), pursuant to CPLR § 3213 and § 5303. Verizon Inc. removed to this court on November 1, 2021, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## LEGAL STANDARD

Foreign country judgments are enforceable by motion under CPLR § 3213 when they are "final, conclusive, and enforceable" in their issuing jurisdiction. CPLR § 5302(a)(2); *see also, e.g.*, *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 803 (S.D.N.Y. 2017). Upon removal, a motion for summary judgment in lieu of complaint under CPLR § 3213 is treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 390 (S.D.N.Y. 2001); *UBS AG, London Branch v. Greka Integrated, Inc.*, 19 Civ. 10786 (LLS), 2020 WL 1957530, at *3 (S.D.N.Y. Apr. 23, 2020); *Genesi v. Int'l Portfolio, Inc.*, No. 12 Civ. 5462 (RA), 2012 WL 5964391, at *2 (S.D.N.Y. Nov. 29, 2012); *Valley Nat. Bank v. Oxygen Unlimited LLC*, No. 10 Civ. 5815 (GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010); *see also Miller v. Steloff*, 686 F. Supp. 91, 93 (S.D.N.Y. 1988) (explaining that the district court "takes the [removed] action in the posture in which it existed when it is removed"). Accordingly, and with Defendant's agreement, Trejos Hermanos has converted its initial § 3213 motion filed in New York state court into a motion for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff has not changed this memorandum from the original state-court brief, other than updating the procedural history and applicable standard to reflect the removal and formatting case citations for federal court practice.

**ARGUMENT**

The Judgment entered by the Tribunal Contencioso is final, conclusive, and enforceable. Trejos Hermanos is therefore entitled to summary judgment.

## I. TREJOS HERMANOS IS ENTITLED TO SUMMARY JUDGMENT.

"New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 239 (2d Cir. 2012) (quotation omitted); *see also Abu Dhabi Commercial Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 117 A.D.3d 609, 610 (1st Dep't 2014) (citing *CIBC Mellon Tr. Co. v. Mora Hotel Corp. NV*, 100 N.Y.2d 215, 221 (2003)). New York law proceeds from the premise that judgments rendered by foreign courts are entitled to enforcement "'under the doctrine of comity absent some showing of fraud in the procurement of the foreign country judgment or that recognition of the judgment would do violence to some strong public policy of this State.'" *Servipronto De El Salvador, S.A. v. McDonald's Corp.*, 837 F. App'x 817, 819 (2d Cir. 2020) (alteration and citation omitted); *see also Abu Dhabi Com.l Bank PJSC*, 117 A.D.3d at 610 (citing *Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78, 82 (2006)). Article 53 of the CPLR codifies the longstanding case law enforcing money judgments on principles of comity. *Id.*; *see also Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895).

A judgment creditor "'does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment.'" *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840(RA), 2020 WL 5751195, at *18 (S.D.N.Y. Sept. 25, 2020) (citation omitted); *see also CIBC Mellon*, 100 N.Y.2d at 222 (citing *Lenchyshyn v Pelko Elec., Inc.*, 281 A.D.2d 42, 49 (4th Dep't 2001)). Accordingly, this court and New York state courts routinely grant recognition to foreign money judgments on motions for summary judgment. *See,*

*e.g.*, *Thomas & Agnes Carvel Foundation v. Carvel*, 736 F. Supp. 2d 730, 755 (S.D.N.Y. 2010) (enforcing English judgment); *Dresdner Bank AG v. Haque*, 161 F. Supp. 2d 259, 264 (S.D.N.Y. 2001) (enforcing German judgment); *Canadian Imperial Bank of Com. v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1254 (S.D.N.Y. 1995) (enforcing Canadian judgment); *John Galliano, SA. v. Stallion, Inc.*, 15 N.Y.3d 75, 82 (2010) (enforcing French judgment); *Priscilla v. EFT Holdings, Inc.*, No. 653049/2016, 2016 WL 6026766, at *2 (Sup. Ct., N.Y. Cnty. Oct. 5, 2016) (enforcing Singaporean judgments); *Really Useful Grp. Ltd. v. Option Clause Entm't LLC*, No. 650843/2016, 2016 WL 3485381, at *3 (Sup. Ct., N.Y. Cnty. June 23, 2016) (enforcing English judgment); *Sea Trade Mari. Corp. v. Stylianos Coutsodontis*, No. 653407/2011, 2014 WL 4787290, at *5 (Sup. Ct., N.Y. Cnty. Sept. 24, 2014) (enforcing Spanish judgment); *Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 957 N.Y.S.2d 602, 608 (Sup. Ct., N.Y. Cnty. 2012), *aff'd*, 110 A.D.3d 578 (1st Dep't 2013) (enforcing Bahraini judgment); *Sung Hwan Co. v. Rite Aid Corp.*, 841 N.Y.S.2d 828 (2007) (unreported table decision), 2007 WL 1815995, at *3 (enforcing Korean judgment); *S.C. Chimexim SA. v. Velco Enters. Ltd*, 36 F. Supp. 2d 206, 216 (S.D.N.Y. 1999) (enforcing Romanian judgment).

A.      **The Judgment Is Final and Conclusive.**

New York law provides that a foreign country judgment is enforceable if it is "final, conclusive and enforceable" "under the law of the foreign country where rendered[.]"  CPLR § 5302(a)(2).  A foreign country judgment is "conclusive" where "it grants or denies recovery of a sum of money."  CPLR § 5303(a).  In considering whether a foreign judgment meets this standard in the jurisdiction where it was rendered, courts may take judicial notice of foreign law. CPLR § 4511(b) ("Every court may take judicial notice without request of . . . the laws of foreign countries.").

The Judgment entered by the Tribunal Contencioso is "final, conclusive and enforceable" under Costa Rican law. The Tribunal Contencioso entered the Judgment following a trial on the merits, and Verizon Inc. has exhausted its avenues of appeal. *See* Laclé Aff. ¶ 8.

The Judgment is also a money judgment, awarding USD 51,355,812 with interest and legal costs. It does not order specific performance, assign any rights or title, or prescribe other relief. The Judgment can be satisfied by money alone. The total amount that Verizon Inc. owes is readily calculable. Assuming a payment date of October 15, 2021, the amount reached USD 93,970,866. Straightforward arithmetic can update that figure for any future payment date.

The calculation of interest and legal costs is no barrier to enforcement. "[A] party seeking to domesticate an unsatisfied foreign judgment under Article 53 may be entitled to an award of interest payment by New York court" where the foreign judgment so instructs. *Servipronto De El Salvador, S.A. v. McDonald's Corp.*, 837 F. App'x 817, 819 (2d Cir. 2020). Courts enforce judgments awarding interest at a specified rate and time period without specifying what that recovered sum would be. For example, in *Shipcraft A/S v. Arms Corp. of the Phil.s, Inc.*, No. 150651/2012, 2013 WL 649415, at *9 (Sup. Ct., N.Y. Cnty. Feb. 19, 2013), the court granted plaintiff's motion pursuant to CPLR § 3213 for summary judgment in lieu of complaint recognizing and enforcing a Danish judgment. The New York Supreme Court rendered a judgment for the amount of the foreign country judgment, or DKK 240,829.00, plus interest at a rate of 9% from May 25, 2011 (the date of the Danish judgment) to February 19, 2013 (the date of enforcement of the Danish judgment). The court instructed that the final amount was to be calculated by the Clerk. *Id.* In *Dunster Properties Ltd. v. Roc Apparel Group LLC*, No. 0600895/2007, 2007 WL 4476792 (Sup. Ct., N.Y. Cnty. Dec. 12, 2007), the court

awarded judgment for the U.S. dollar equivalent of 102,520 British pounds plus 8% interest through the entry of judgment.

Nor is the need to reference interest rates and statutory formulas a barrier to enforcement. Courts often consult outside sources in calculating damages. For example, in *CDR Creances, S.A.S. v. Cohen*, 23 Misc. 3d 1102(A) (Sup. Ct., N.Y. Cnty. 2009) (unpublished table decision), 2009 WL 837669, the plaintiff sought to enforce a French judgment for €1.89 million, and the court entered judgment in favor of plaintiff for $2.21 million. *Id.* at *1. The court calculated the amount of damages in dollars "by applying the conversion rate of 1.17135 dollars to the euro that was in effect on May 20, 2003, and applying the interest rate of 7.11% which was employed by the French court." *Id.*; *see also In re B-E Holdings, Inc.*, 228 B.R. 414, 420, n.12 (E.D. Wis. Bankr. 1999) (calculating damages awarded in a Peruvian judgment using tables completed by an expert appointed by the Peruvian Court); *Laminoirs-Trefileries-Cableries de Lens, S. A. v. Southwire Co.*, 484 F. Supp. 1063, 1071 (N.D. Ga. 1980) (consulting the Wall Street Journal to determine the exchange rate from francs to dollars).

### B.   No Grounds for Non-Recognition Exist.

None of the three grounds for mandatory non-recognition apply here. *First*, Costa Rica's judicial system provides for the impartial administration of justice and comports with notions of due process. *See* CPLR § 5304(a)(1). New York law "does not demand that the foreign tribunal's procedures exactly match those of New York"; it is "satisfied if the foreign court's procedures are compatible with the requirements of due process of law." *CIBC Mellon*, 100 N.Y.2d at 222; *see also Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F. Supp. 609, 616 (S.D.N.Y. 1991) ("it is well established that mere divergence from American procedure does not render a foreign judgment unenforceable").

Costa Rican courts easily clear that threshold.  In considering whether Costa Rica

provided a "legal system that would treat litigants fairly," the Eastern District of Louisiana

concluded:

> "The Constitution and law [of Costa Rica] provide for an independent
> judiciary, and the Government generally respects this provision in
> practice. The Constitution provides for the right to a fair trial, and an
> independent judiciary vigorously enforces this right."  U.S. Dept. of
> State, Country Report on Human Rights Practices, Costa Rica, 2001
> (released Mar. 4, 2002).  Further, . . . Costa Rica has one of the more
> independent, advanced judicial systems in Latin America.

*Canales Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 734–35 (E.D. La. 2002) (alteration in

original).[3]  Other courts routinely find that Costa Rica is an adequate forum providing for due

process and fair proceedings.  *See, e.g.*, *Griffith v. Gonzales-Alpizar*, 421 P.3d 282 (Nev. 2018)

(affirming enforcement of Costa Rican judgment); *McLane v. Marriott Int'l, Inc.*, 960 F. Supp.

2d 1351 (S.D. Fla. 2013) (finding that Costa Rican courts provided an adequate alternative forum

and dismissing on grounds of *forum non conveniens*); *Borja v. Dole Food Co., Inc.*, 2002 WL

31757780, at *4 (N.D. Tex. Nov. 29, 2002) ("Costa Rica provides an adequate forum");

*Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co.*, 896 F. Supp. 1197,

1201 (M.D. Fla. 1995) (accepting evidence that "Costa Rica is a civil law jurisdiction with a

reliable and impartial court system"); *Atl. Ship Supply, Inc. v. M/V Lucy*, 392 F. Supp. 179, 183

(M.D. Fla. 1975) (granting "full faith and credit" to the "judgment and decree of the Court of

Costa Rica").[4]

---

[3]  The current version of the State Department report provides the same.  *See* U.S. Dept. of State, Country Report on
Human Rights Practices, Costa Rica, 2020 (released Mar. 30, 2021), *available at* https://www.state.gov/reports
/2020-country-reports-on-human-rights-practices/costa-rica/

[4]  By contrast, courts concluded that a foreign judicial system is not fair and impartial and did not comport with the
requirements of due process, where the country was "embroiled in a civil war" and in a "state of chaos," where the
"Constitution was ignored," "justices and judges served at the will of the leaders of the warring factions," and "due
process rights of litigants were often ignored."  *Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 287 (S.D.N.Y.
1999).

*Second*, the Tribunal Contencioso had personal jurisdiction over Verizon Inc., which voluntarily appeared in Costa Rica and litigated the claims through trial and appeal. *See* CPLR § 5304(a)(2). Verizon Inc.'s participation precludes it from raising any defense on grounds of personal jurisdiction.

*Third*, the Tribunal Contencioso had jurisdiction over the subject matter of the dispute. *See* CPLR § 5304(a)(3). Verizon Inc. challenged subject-matter jurisdiction before both the trial court and the appellate court, losing in both forums. That issue is settled, and Verizon Inc. is collaterally estopped from challenging the Court's subject-matter jurisdiction here. When considering enforcement of foreign judgments, courts "grant preclusive effect to the [foreign court's] finding" where the defendant "had the opportunity to fully and fairly litigate the . . . issue" in that forum. *ICC Chem. Corp. v. TCL Indus. (Malay.) SDN*, 206 F. App'x 68, 70 (2d Cir. 2006). In so doing, courts apply the well-worn rules of collateral estoppel. *See Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F. Supp. 610, 616 (S.D.N.Y. 1979) ("[W]hen an issue that has necessarily been decided in the prior action is decisive of the subsequent action and the party seeking to avoid the estoppel had a full and fair opportunity to litigate the issue in the prior action, that party is bound by the prior decision."). The Supreme Court of Justice addressed and decided Verizon Inc.'s challenges to the Tribunal Contencioso's jurisdiction; that determination was necessary to its decision.

Collateral estoppel requires that the first court had subject-matter jurisdiction. Verizon Inc. might (mistakenly) argue that the Tribunal Contencioso's decision concerning its own subject-matter jurisdiction cannot be the basis for collateral estoppel on that issue. But that argument would miss the mark: Verizon Inc. litigated the question of the Tribunal Contencioso's subject-matter jurisdiction on appeal before the Supreme Court of Justice. There

can be no question that the Supreme Court of Justice had subject-matter jurisdiction to decide matters of Costa Rican law, including the scope of the Tribunal Contencioso's authority. *See, e.g.*, *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (a court "always has jurisdiction to determine its own jurisdiction"); *ICC Chem. Corp.*, 206 F. App'x at 70 (noting that the "Singapore Court plainly had subject matter jurisdiction to decide whether the parties agreed to arbitrate in New York, and the Singapore Court's finding on that issue, which is entitled to comity, answers ICC's attack on its jurisdiction over the merits of TCL's suit").

### C. None of the Discretionary Grounds for Non-Enforcement Applies.

Verizon Inc. has "the burden of proving that a discretionary basis for non-recognition pursuant to CPLR § 5304 (b) applies." *S.C. Chimexim*, 36 F. Supp. 2d at 212. As the record in this case indicates, Verizon Inc. could not hope to meet that burden. CPLR § 5304(b) sets forth nine grounds on which the Court may, in its discretion, decline to recognize and enforce a foreign judgment:

1. the defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;

2. the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;

3. the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or of the United States;

4. the judgment conflicts with another final and conclusive judgment;

5. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by a proceeding in that court;

6. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action;

7. the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment;

8.      the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law; or

9.      the cause of action resulted in a defamation judgment obtained in a jurisdiction outside the United States . . . .

CPLR § 5304(b)(1)–(9).  None of these grounds applies.

Verizon Inc. received notice of the proceedings and actively participated in them for twelve years through an evidentiary trial and multiple appeals.  *See* CPLR § 5304(b)(1), (6), (8).  There is no suggestion that the judgment is "repugnant to the public policy of this state" or "conflicts with another final and conclusive judgment."  CPLR § 5304(b) (3), (4); *see Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 406 F. Supp. 2d 274, 280 (S.D.N.Y. 2005) (the test "is not whether the foreign law on which the judgment depends is perfectly congruent with domestic law on the same subject, or whether the identical judgment could have been obtained in New York on the same facts"), *rev'd on other grounds*, 489 F.3d 474 (2d Cir. 2007); *S.B. v. W.A.*, 38 Misc. 3d 780, 803 (Sup. Ct., Westchester Cnty. 2012) (judgment enforceable even where foreign law "may be more expansive than the laws of New York"), *aff'd*, 135 A.D.3d 792 (2016).  Nor is there any indication of doubt about the integrity of the court or that the specific proceeding lacked due process.  CPLR § 5304(b)(7), (8).

As with its objection to subject-matter, Verizon Inc. has raised before the specter of an arbitration agreement.  *See* Laclé Ex. C, Appellate Decision at 2, 3.  And as before, that issue has already been decided, and Verizon Inc. is precluded from raising it again here.  As the Second Circuit held in *ICC Chem. Corp.*, the "[Costa Rican] Court plainly had subject matter jurisdiction to decide whether the parties agreed to arbitrate . . . , and the [Costa Rican] Court's finding on that issue, which is entitled to comity, answers [Verizon Inc.'s] attack on its jurisdiction over the merits of [Trejos Hermanos's] suit."  206 F App'x at 70.

In short, none of the grounds for non-recognition applies.

**CONCLUSION**

For these reasons, Trejos Hermanos respectfully requests that the Court enter an order (i) granting summary judgment; (ii) setting a date for final calculation of the statutory adjustments owed under the Judgment; (iii) setting a date by which Plaintiff should submit the updated calculation to the Court; (iv) directing the Clerk of the Court to enter judgment in favor of Trejos Hermanos against Verizon Inc. in the final amount so calculated; and (v) imposing post-judgment interest from the date of entry until payment.

Dated:  November 15, 2021

WILLIAMS & CONNOLLY LLP

By: _____

    Ana C. Reyes (admission papers forthcoming)
    Benjamin W. Graham (Bar No. BG1195)
    650 Fifth Avenue, Suite 1500
    New York, NY  10019
    Tel.:    (202) 434-5000
    Fax:    (202) 434-5029
    Email:  bgraham@wc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

*/s/ Benjamin W. Graham*
Benjamin W. Graham