# Exhibit D



Case 08-001505-1027-CA

Res. 000500-F-S1-2021

**FIRST CHAMBER OF THE SUPREME COURT OF JUSTICE.** San José, at eight hours forty-five minutes a.m. on March ninth, two thousand twenty-one.

In a hearing procedure established **by TREJOS HERMANOS SUCESORES SOCIEDAD ANÓNIMA** against **INSTITUTO COSTARRICENSE DE ELECTRICIDAD [Costa Rican Electricity Institute], VERIZON COMMUNICATIONS INC.** and **VERIZON INFORMATION SERVICES COSTA RICA LLC.,** the special legal representative of the defendant companies formulates three motions for dismissal against the judgment of this Court no. 2017-F-S1-2020 of nine o'clock a.m. on June 25, 2020.

**Judge Solís Zelaya writes**

WHEREAS

**I.** In this case, the co-defendants Verizon Communications Inc. and Verizon Information Services Costa Rica LLC filed a cassation appeal against judgment no. 66-2017-V of eight o'clock a.m. on July 19, 2017, of Section V of the Contentious Administrative Court. This Chamber addressed it in its judgment no. 2017-F-S1-2020 of nine o'clock a.m. on June 25, two thousand twenty. Thereafter, the appellants filed three motions for absolute dismissal. The first two on July 17 and the last on July 20 of the same year. In the **first,** attorney Luis Carlos García Rivera alleges the following.

The judgment lacks justification, assessment and congruence that demonstrates the analysis of the appeal, the evidence in the case file, the facts of the lawsuit and the evidence presented in the trial. The *"cursory"* examination demonstrates "**poverty** of the Chamber's presentation" and *"the **lightness** with which a Court of law of this caliber resolved the appeal".* (bolding added). The analysis of the merits is almost null and void and, furthermore, it does not *"discuss and evaluate various points of the trial",* accepting as valid the weak and legally invalid arguments put forward by the lower court. According to the text of the contract, the only condition for its termination was simple communication, so that the award of damages has no basis. In addition, the claimant never alleged or demonstrated that the termination of the contract between the Costa Rican Electricity Institute (ICE) and Verizon was fraudulent. The termination occurred because Verizon made a proposal to ICE for the printing of telephone directories according to the Costa Rican market and distribution by provinces. The discussion was about a different way of printing the directories and the manner of distribution. It is not possible to speak of fraudulent termination because ICE did not accept a more realistic and economical business proposal. "*Now, this Chamber, **following the game of the claimant's counsel** and of the Contentious Administrative Court, reiterates on several occasions said concept without even analyzing whether there was legal support to arrive at that **false** qualification"* (bolding added). The concept of willful misconduct does not apply to the termination of the lawsuit between ICE and Verizon, because the latter did not charge for the printing of the directories and then, without any justification, failed to comply, abandoning its contractual and legal obligations. According to the ruling, the claimant had to modernize its equipment to face technological changes and the

requirements of the contractors, an argument that is **"false"** (emphasis added) because the claimant, in its lawsuit, admitted that it decided to invest in equipment as a result of a business decision of the company. It is *"false* " (bolding not original) that Verizon Co. was jointly and severally liable for both the obligations incurred by Verizon LLC and the negative consequences caused to the claimant by the termination of the master purchase agreement. Therefore, the award of damages lacks legal and technical grounds. "*Moreover, the guilty verdict* **is based on false premises that have been so assembled to not only assemble and put together a set of false facts but also to justify the exaggerated guilty verdict.**" (Emphasis added). The Chamber and the Court support a **"false and misleading**" **thesis, "***for the sole purpose of accepting the claim and ordering the defendant to pay the alleged damages in an exaggerated and disproportionate manner"***. (Bolding added). To assert willful misconduct, Verizon's actions were "*misrepresented*" by stating that the willfulness arose from explicitly stating its disagreement with the suggested modifications. This thesis demonstrates the lack of a "*serious, valid and solid*" case, since the fact that Verizon expressed its disagreement with the suggested modifications does not demonstrate willful misconduct. If it had evaluated this criterion in a "*serious and **honest** manner, it should have modified the concept of the entire systemic skeleton of the judgment, which does not withstand the slightest discussion (...) the entire scaffolding of the judgment would fall and therefore the **false** argument of Verizon's fraudulent action because a disagreement does not mean that it is fraudulent (...)*". (Emphasis added.) It is also alleged that when the contract between Verizon and THS was terminated, the latter had at least 103 copies of the white pages in stock and had acquired debts with

other entities to purchase the necessary machinery. This is false because the exact amount is not indicated, in addition to the fact that it paid the claimant for the cost of all the prints that were in the warehouse, so it assumed the cost of the losses. The claimant assumed the business risk by acquiring machinery to carry out the development of telephone directories. This was not an imposition by Verizon. This thesis, moreover, was not presented by the claimant in the facts of the case. **"It denotes favoritism in favor of THS on the part of this Court of Cassation** (sic*) by openly stating: "These situations are in line with the above-mentioned cases of impediment that make it impossible to apply the exemption from liability provided for in the clause, and therefore the compensation is appropriate."* (The highlighting is not from the original). Another serious flaw consisted of the fact that at the trial stage it alleged that the claimant's attorneys never requested the termination of the master agreement but settled the alleged damages. According to the jurisprudence, damages cannot be awarded if the resolution was not previously decreed. ICE's claim is independent from that of the claimant and the scope of ICE's claim does not benefit it in any way, so it cannot be alleged that Verizon's breach declared in administrative proceedings covers the omission of not having requested the contractual termination in this process. The Chamber **"covers up"** (emphasis added) the omission that TSH [sic - THS] never requested the termination of the contract by indicating that it was a fraudulent act. *"In conclusion XI again **in bad faith this Court** continues to exploit the concept of fraudulent breach of contract, to which I am not going to refer, and I refer to what was stated above since it is a **play on words made with ill intent** to justify a judgment and a situation that **are not true."** (bolding added) According to Article 267 of the Code of Commerce, the

accounting books serve to demonstrate the accounting situation of the company, but the expert witness Humberto Romero did not examine them and only relied on the study carried out by Tomás Evans Salazar. Proof cannot arise from an accountant's certification that may insert inaccurate data and information. The expert's report lacks probative value because he did not conduct an examination of the company's accounts. It is not true that it failed to object or provide evidence that would undermine the methodology and dates estimated for future value, since the Chamber was not careful to review the written argumentation discussed in the trial. The expert only transcribed the estimates of Tomás Evans. In this regard, the appeal of cassation was rejected in 17 lines without serious criteria and analysis. In 5 lines it rejects "another serious ground to be analyzed" - which it does not specify-. **"What** (sic) **sadness of the justice we have in the highest Court in the country. It gives the impression that despite the stature of their duties** (sic) **and with all that is ordered by Article 28.1 this is not an obstacle to deciding contrary to law."** (emphasis added). Conclusion XV does not analyze the proposed censorship and only transcribes information without any study whatsoever. In Conclusion XVI, the statute of limitations objection was rejected without valid reasoning, and it is only stated that it was an attempt to collect damages. The statute of limitations is not assessed by what is requested in the claim, but by the contractual nature of the relationship that binds the parties. In the analysis of the existence of an economic interest group, it is a "*pity*" that phonetic similarity is used. The ruling could not make use of the concept of companies of the same economic group developed by Sugef, because it is oriented to financial matters. In order to hold a foreign company liable, this Court "*resorts to **fallacy, deceit and lies** to tie up a situation that*

has no legal basis". (…) Finally, how (sic) **do judges of the stature of this Court dare to consider as proven the existence of Verizon as part of the economic interest group** without even proving the different administrative, executive and managerial links and, above all, the relationship between each of the different companies. (…) **One can only understand that in order to prove the unprovable in this case and pave the way to finding for the claimant, these atrocities to the law are committed in the name of a justice that does not exist."** (bolding added). It requests the absolute dismissal of the judgment and the ordering of the integration of a substitute court to hear the appeal. In the **second motion,** attorney Luis Carlos García Rivera alleges that he challenged the heads of this body, an action that, by then, had not been processed. In addition, he had filed a complaint before the Judicial Inspection Body, which was rejected by the Plenary Court, *"alleging without real grounds that the Court cannot analyze the judgments rendered, which is not true because in said complaint the defects of the lack of application of the Civil (sic), Contentious Administrative and Procedural Law, both litigious and civil, were stated in a very punctual and exact manner. (…) Despite the fact that the members of the Plenary Court have the competence to examine the correct application of the rules of law, they refused to do so under a simple excuse (…)".* The complaint was based on the lack of substantiation of the resolutions in view of "the diversity of arguments and norms that they never wanted to refer to (…)". In these proceedings, the judges did not apply the law or the reiterated jurisprudence of the Chamber in *"very specific matters,* **going to the extreme of modifying and justifying conducts that were previously reprehensible for the same members of the First Chamber, all of which shows us that they have**

*maintained a direct interest in the resolution of the matters of my clients".* *(emphasis added).* In addition, a criminal complaint was filed - of which no further details were provided -. By virtue of the foregoing, the absolute dismissal of the aforementioned judgment is claimed. In its opinion, as the resolution of the challenge was pending, in addition to the existence of a complaint and a criminal charge in process, the members of this Chamber were inhibited from issuing the respective judgment under the terms of Article 100 of the Code of Contentious Administrative Procedure and Article 2.4 of the Civil Procedural Code because "*there is no doubt that **the actions of the judges were opposed to the sound practices of legality and morality** by forcibly ruling on a case in which they were duly challenged (...) **clearly and forcefully flouting public order rules (...) the judges have shown a direct interest in ruling on this case and others of my client. (...)***". (Emphasis added.) Since the challenge was not processed, they lost jurisdiction to issue a judgment, which is null and void. In the **third motion,** attorney Luis Carlos García Rivera insists, in relation to the consideration that the co-defendants are part of an economic interest group, that the Chamber used arguments "without legal value or evidentiary support", since it cited a regulation of the General Superintendence of Financial Entities related to credit limits for individuals and economic interest groups, oriented to a particular and different activity, so that he is concerned and "*saddened*" by the "*lack of analysis and true legal grounds*" of both judgments, which shows a lack of foundation and inconsistency.

**II.** First of all, it is necessary to point out that these proceedings must be processed and ruled on pursuant to the regulations set forth in the Code of Civil Procedure in force, in accordance with the provisions of its Transitional Provisions I and

II, - a rule which, moreover, is the one invoked by the appellant as the basis for its action - while the Code of Contentious Administrative Procedure lacks regulations in this regard, so that, by virtue of the provisions of its numeral 220, it is necessary to resort to the common procedural rules, due to their supplementary nature for this matter. Now, as to its allegations, it is clear that the **first and third motions**, it criticizes - or intends to criticize - the merits of judgment no. 2017-F-S1-2020 of this Chamber of nine o'clock a.m. on June 25, 2020. In summary, it alleges the following: 1. lack of analysis of its cassation appeal - without specifying which claim was overlooked - , 2. inadmissibility of the award of damages, 3. the conduct of its client cannot be classified as fraudulent, 4. the opposing party never requested the ruling, therefore damages could not be awarded, 5. the expert opinion is not valid, 6. its arguments - which it does not detail - were ruled upon in a few lines, which shows a lack of analysis, 7. in certain recitals of the judgment there was no reasoning - which it justifies only in its statement - and; 8. the defendants are not part of a group of economic interest. Its **third motion,** it is worth clarifying, revolves solely around this last aspect. Now, in the **second** motion, it claims dismissal of the ruling due to a pending challenge, the filing of a complaint before the Plenary Court which, according thereto, was rejected, and the processing of an unspecified criminal complaint.

**III.** The interim proceedings are inadmissible for the following reasons. According to Article 152 paragraph 3) of the Code of Contentious Administrative Procedure, the judgments of this Chamber only admit review appeals, not motions, which renders the filed motions inadmissible. The same answer can also be reached through the ordinary civil procedural rules. It should be noted that according to Article 33.3 of the Code of Civil Procedure in force, a motion for dismissal after the issuance of the final judgment can

only be alleged in proceedings in which review does not proceed. According to Article 72 ibidem, the review proceeds against rulings that have the effect of res judicata. The judgment of the ordinary proceeding - or of hearing procedure - produces res judicata material (numeral 64 ibidem), so that it only admits an appeal for review, but not a motion for dismissal. That is to say, under both regulations, the challenged ruling could only be challenged by means of an appeal for review - through the grounds for review provided for this purpose - and not by means of motions for dismissal. This makes the motions inadmissible. Now, <u>even disregarding the above,</u> and for further reasons, according to the civil procedural regulations (applicable in this matter due to its supplementary vocation already mentioned in view of the lack of provisions in the procedural litigation area), dismissal can only be decreed when it causes a lack of proper defense (article 32.1). None of the allegations contained in his motions are aimed at showing that the decision of this Chamber, issued on the occasion of his cassation appeal, placed him in such a situation. Rather, his recriminations criticize - without any basis other than his own statement - the rejection of his appeal, and at the same time he formulates a series of serious charges related to, according to him, conduct of these members that is far from the principle of impartiality of the judge. Such accusations, besides being reckless, unfounded and, moreover, obstinate to the point of using disproportionate and disrespectful epithets, lose sight of the fact that his professional work should have channeled the defense of the interests of his clients, through the available legal channels and remedies, **demonstrating that the law protected his claims,** which he failed to do in a timely manner. Therefore, the manner - and the tone - of criticizing this body with ad hominem fallacies, without demonstrating, by any means,

deference to the law in the ruling of this body, is wrong. Thus, his arguments actually hide a revocation of the judgment, a non-existent procedure in the Costa Rican legal system - there is no revocation of judgments - and therefore, in the end, also for these reasons, it should be denied. It is worth reminding the appellant that, as he rightly points out, the complaint he filed against the majority of the undersigned, before the Plenary Court, on the occasion of the decision of this Chamber in an arbitration proceeding, was duly rejected (Session no. 02-19 of January 21, 2019, Article XVIII and Session no. 13-19 of March 25, 2019, Article XXIV). The same happened with the challenge, submitted on April 2, 2019, in this matter and rejected in ruling 48-F-S1-2021 of 10:00 a.m. on January 13, 2021, of this Chamber. It is worth reminding the appellant that this last action was justified by the fact that, according to the appellant, since the analysis of the cassation appeal he had filed was pending, it was not up to the then members of the Court to issue a judgment on the merits, due to the pending complaint before the Plenary Court. However, contrary to his statement, in which he was untruthful, by that time the complaint had already been resolved, including by way of reinstatement. Finally, with respect to the criminal proceeding he cites, it is important to make a clarification. This Chamber, as stated, issued a judgment on the merits, in this matter, in its judgment 2017-F-S1-2020 of nine o'clock a.m. on <u>June 25, 2020</u>. At that time, most of us undersigned were **not aware of the complaint that had been filed** before the Attorney General's Office by Mr. Luis Carlos García Rivera - special legal representative of Verizon Information Services LLC-. This information was known to the defendants until the <u>end of August of that year,</u> when we were notified of the dismissal issued by the Third Chamber in its judgment no. 2020-1007 of 2:12 p.m. on August 7, 2020, in which the

Attorney General's request to that effect was granted. This dismissal was notified to us - the defendants - <u>at the end of August 2020,</u> as stated, so that the judgment of this Chamber, now challenged by way of several motions for dismissal, **was taken without having notice of the criminal proceeding initiated by Mr. Garcia Rivera**. Therefore, such complaint cannot be insinuated as a reason for subjective incompetence - for loss of impartiality - to issue a judgment on the merits in this litigation, since it was only known to the claimant, not to the respondents. Therefore, in spite of all its multiple motions and dilatory actions, no reason has been found - nor was it found - to affect the subjective competence of the members of this body. Finally, it is important to remind the party that its extrajudicial actions against the majority of the members of this body, coupled with accusations of partiality, have been based solely on its own statements, since with respect to the complaint and the challenge, they have not been accompanied by a minimum demonstration of subjective disqualification of any of the persons who make up this body in the fulfillment of their constitutional or legal duties, and we have been constrained to resolve the dispute in **accordance with the law, <u>based on the arguments of the parties.</u> If the arguments of any of the litigants are deficient, technically weak or simply contrary to the law, it is not up to this body to rule in order to satisfy the interests - or pressures - of any of the parties, <u>but instead to protect the legal system,</u> since that is the function of justice entrusted to this body.** In short, for all these reasons, the motion, apart from the above, would not be admissible on the merits either.

## THEREFORE

The three motions for annulment are declared inadmissible. Return the case file, without further delay, to the Court of origin.

**Luis Guillermo Rivas Loáiciga**

**Román Solís Zelaya**                    **Rocio Rojas Morales**

**William Molinari Vílchez**              **Damaris Vargas Vasquez**

Rosalena


# <u>Certificate of Accuracy</u>

Tuesday, 26 October 2021

To whom it may concern,

We Trustpoint.One, hereby certify to the best of our knowledge and belief that the foregoing document described as "The Decision of the First Chamber of the Court of Justice dated March 9, 2021" is a true and accurate translation of the original.

For all certified translations, Trustpoint.One follows an ISO 9001:2015 certified process. A fully vetted professional translator who is a native speaker of the target language and expert in the subject matter translates the documents. Thereafter, an equally qualified linguist edits the translations, which are then sent back to the lead translator for finalization. As a final step, the project manager and quality control specialist reviews the final translation for completeness.

If there is any additional information we can provide you, please do not hesitate to contact us.

Yours sincerely,

*Elizabeth Wozniak*
Elizabeth Wozniak
Project Manager
Trustpoint.One

3200 Cobb Galleria Parkway
Suite 200
Atlanta, GA 30339

Trustpoint.One/translate-one
p: 412.261.1101
f: 412.261.1159

page 1 of 1



Exp. 08-001505-1027-CA

Res. 000500-F-S1-2021

SALA PRIMERA DE LA CORTE SUPREMA DE JUSTICIA. San José, a las ocho horas cuarenta y cinco minutos del nueve de marzo de dos mil veintiuno.

En proceso de conocimiento establecido por TREJOS HERMANOS SUCESORES SOCIEDAD ANÓNIMA contra el INSTITUTO COSTARRICENSE DE ELECTRICIDAD, VERIZON COMMUNICATIONS INC. y VERIZON INFORMATION SERVICES COSTA RICA LLC., el apoderado especial judicial de las sociedades demandadas formula tres incidentes de nulidad contra la sentencia de esta Sala no. 2017-F-S1-2020 de las nueve horas del 25 de junio de 2020.

Redacta el magistrado Solís Zelaya

CONSIDERANDO

I. En este asunto, las codemandadas Verizon Communications Inc. y Verizon Information Services Costa Rica LLC plantearon recurso de casación contra la sentencia no. 66-2017-V de las ocho horas del 19 de julio de 2017 de la Sección V del Tribunal Contencioso Administrativo. Esta Sala lo resolvió en su sentencia no. 2017-F-S1-2020 de las nueve horas del 25 de junio de dos mil veinte. Luego de ello, los recurrentes plantearon tres incidentes de nulidad absoluta. Los dos primeros el 17 de julio y el último el 20 de julio de ese mismo año. En el primero, el licenciado Luis Carlos García Rivera alega lo siguiente. La sentencia carece de fundamentación,

valoración y congruencia que demuestre el análisis del recurso de casación, las probanzas existentes en autos, los hechos de la demanda y la prueba evacuada en el debate. El examen "*somero*" demuestra "*pobreza de la exposición de la Sala*" y "*la ligereza con que un Tribunal de derecho de este calibre resolvió el recurso de casación.*" (la negrita se añade). El análisis de fondo es casi nulo y, además, no se "*entra a discutir y valorar diversos puntos del debate*", dando por buenos los argumentos débiles y carentes de valor jurídico expuestos por el Tribunal de instancia. Conforme al texto del contrato, la única condición para terminarlo era la simple comunicación, por lo que la condena en daños y perjuicios no tiene ningún sustento. Además, la parte actora nunca alegó ni demostró que la terminación del contrato entre el Instituto Costarricense de Electricidad (ICE) y Verizon fuera dolosa. La terminación se dio porque Verizon realizó una propuesta al ICE de impresión de guías telefónicas acorde al mercado costarricense y de distribución por provincias. La discusión versó sobre una forma diferente de imprimir las guías y la forma de distribución. No se puede hablar de terminación dolosa porque el ICE no aceptó una propuesta de negocio más realista y económica. "*Ahora bien, esta Sala siguiendo el juego del abogado de la parte actora y del Tribunal Contencioso, reitera en varias oportunidades dicho concepto sin ni siquiera analizar si hubo sustento legal para llegar a esa falsa calificación*" (la negrita se suple). El concepto doloso no aplica a la terminación de la demanda entre el ICE y Verizon, porque no se trató que esta última cobrara por la impresión de las guías y, luego, sin justificación alguna, incumpliera dejando abandonadas sus obligaciones contractuales y legales. Según el fallo, la actora debió modernizar sus equipos para enfrentar cambios tecnológicos y requerimientos de los

contratantes, argumento que es "*falso*" (se añade el énfasis) porque la actora, en su demanda, admitió que decidió invertir en equipos por una decisión de negocio de la empresa. Es "**falso**" (la negrita no proviene del original) que Verizon Co. respondía solidariamente tanto por las obligaciones contraídas por Verizon LLC, como por las consecuencias negativas ocasionadas a la actora con la extinción del contrato maestro de compra. Por ello, la condena en daños y perjuicios carece de fundamento legal y técnico. "*Además, la condenatoria parte de premisas falsas engranadas de tal forma para montar y armar el elenco no solo de hechos falsos sino justificar la exagerada condenatoria .*" (El destacado es suplido). La Sala y el Tribunal apoyan una tesis "*falsa y engañosa*", "*con el único propósito de acoger la demanda y condenar al pago de supuestos daños de manera exagerada y desproporcionada.*" (La negrita se añade). Para afirmar la conducta dolosa, se "*tergiversó*" la actuación de Verizon, señalando que el dolo surgió de manifestar explícitamente su desacuerdo con las modificaciones sugeridas. Esta tesis demuestra falta de argumentación "*seria, válida y sólida*" pues el que Verizon manifestara su desacuerdo con las modificaciones sugeridas, no demuestra conducta dolosa. De haber valorado ese criterio en forma "*seria y honesta debió modificar el concepto de todo el esqueleto sistémico de la sentencia que no aguanta la mínima discusión (...) todo el andamiaje de la sentencia se caería y por ende el falso argumento de la actuación dolosa de Verizon porque un desacuerdo no significa que sea doloso (...)*". (El énfasis es suplido). Se afirma también que cuando se terminó el contrato entre Verizon y THS esta última tenía en existencia al menos 103 ejemplares de las páginas blancas y había adquirido deudas con otras entidades para comprar maquinaria necesaria. Esto es falso

porque no se indica el monto exacto, además de que le canceló a la actora el costo de todas las impresiones que estaban en bodega, por lo que asumió el costo de las pérdidas. La actora asumió el riesgo del negocio al adquirir maquinaria para cumplir con el desarrollo de las guías telefónicas. No se trató de una imposición de Verizon. Esta tesis, además, no fue expuesta por la actora en los hechos del proceso. "*Se denota favoritismo a favor de THS de parte de este Tribunal de Casación* (sic) *al indicar abiertamente:* "*Estas situaciones se ajustan a los supuestos de impedimento supra indicados que imposibilitan la aplicación de la eximente de responsabilidad prevista en la cláusula, por lo que procede la indemnización.*" (El destacado no proviene del original). Otro grave vicio consistió en que en la etapa de juicio alegó que los abogados de la actora nunca solicitaron la resolución del contrato maestro, pero liquidaron los supuestos daños y perjuicios. Conforme a la jurisprudencia no se puede condenar en daños y perjuicios si previamente no se decretó la resolución. La demanda del ICE es independiente de la de la actora y los alcances de la del ICE en nada le benefician, por lo que no podría alegarse que el incumplimiento de Verizon declarado en vía administrativa cubre la omisión de no haber solicitado en este proceso la resolución contractual. La Sala "*encubre*" (énfasis añadido) la omisión de que TSH nunca pidió la resolución contractual indicando que se trató de una actuación dolosa. "*En el considerando XI nuevamente de mala fe este Tribunal sigue explotando el concepto de incumplimiento contractual doloso, al cual no voy a referirme y me remito a lo expuesto antes ya que se trata de un juego de palabras hecho con la mala intención para justificar una sentencia y una situación que no son ciertas.*" (la negrita es suplida) Conforme al artículo 267 del Código de Comercio,

los libros contables sirven para demostrar la situación contable de la empresa, pero el perito Humberto Romero no los examinó y sólo se basó en el estudio realizado por Tomás Evans Salazar. La prueba no puede surgir de una certificación de un contador que puede insertar datos e información inexacta. El informe del perito carece de valor probatorio porque no realizó un examen de la contabilidad de la empresa. No es cierto que omitió objetar o aportar prueba que desvirtuara la metodología y fechas estimadas para valor futuro, pues la Sala no tuvo el cuidado de revisar la argumentación escrita y discutida en el debate. El perito tan sólo transcribió las estimaciones de Tomás Evans. Al respecto, el reclamo ante casación fue rechazado en 17 líneas sin criterio y análisis serio. En 5 líneas se rechaza "*otro motivo serio de ser analizado*" -que no especifica-."*Que* (sic) *tristeza de la justicia que tenemos en el más alto Tribunal del país. Da la impresión que a pesar altura de sus cargos* (sic) *y con todo lo ordenado por el artículo 28.1 ello no es óbice para resolver contrario a Derecho.*" (el énfasis se añade). En el Considerando XV no se analiza la censura planteada y tan sólo se transcribe información sin realizar estudio alguno. En el Considerando XVI se rechazó la excepción de prescripción sin razonamiento válido y tan sólo se expone que se trató de cobrar daños y perjuicios. La prescripción no se valora por lo que se pida en la demanda, sino por la naturaleza contractual de la relación que une a las partes. En el análisis de la existencia de un grupo de interés económico provoca "*lástima*" que se use la similitud fonética. El fallo no podía echar mano al concepto de empresas del mismo grupo económico desarrollado por Sugef, porque se orienta al tema financiero. Para hacer responsable a una empresa extranjera, este Tribunal "*acude a la falacia, al engaño y a la mentira , para*

amarrar una situación que no tiene ningún fundamento jurídico."(...) Finalmente, como (sic) se atreven jueces de la envergadura de este Tribunal a tener por probada la existencia de que Verizon forma parte del Grupo de interés económico sin ni siquiera probar los distintos nexos administrativos, ejecutivos, directivos y sobre todo la relación entre cada una de las distintas empresas. (...) No queda más que entender que por tener por probado lo indemostrable en este proceso y allanar el camino para darle la razón al actor se cometen estas atrocidades al derecho en nombre de una justicia que no existe." (la negrita se suple). Solicita la nulidad absoluta de la sentencia y se ordene la integración de un tribunal suplente para conocer del recurso. En el segundo incidente, el abogado Luis Carlos García Rivera alega que recusó a los titulares de este órgano, gestión que, para entonces, no había sido tramitada. Además, había planteado un recurso de queja ante la Inspección Judicial, rechazada por Corte Plena, "alegando sin verdadero fundamento que la Corte no puede analizar las sentencias dictadas, lo cual no es cierto porque en dicha queja se expusieron de manera muy puntual y exacta los vicios de la falta de aplicación de la Ley Civil (sic), Contenciosa administrativa y procesal tanto contenciosa como civil. (...) A pesar de que los miembros de la Corte Plena tienen competencia para examinar la aplicación correcta de las normas del derecho se negaron a hacerlo bajo una simple excusa (...)". La queja se fincó en la falta de fundamentación de las resoluciones frente a "la diversidad de argumentos y normas sobre las que nunca quisieron referirse (...)". En estos procesos los magistrados no aplicaron el derecho ni la jurisprudencia reiterada de la Sala en "temas muy puntuales, llegando al extremo de modificar y justificar

*conductas que antes fueron reprochables para los mismos miembros de la Sala Primera, todo lo cual nos demuestra que han mantenido un interés directo en la resolución de los asuntos de mis representadas."* (el énfasis es añadido). Además, fue planteada una denuncia penal -de lo que no da mayores datos-. En virtud de lo anterior, reclama la nulidad absoluta de la sentencia antes referida. En su criterio, estando pendiente de resolver la recusación, sumado a la existencia de una queja y de una denuncia penal en trámite, los integrantes de esta Sala estaban inhibidos para dictar la respectiva sentencia en los términos del artículo 100 del Código Procesal Contencioso Administrativo y el artículo 2.4 del Código Procesal Civil pues *"no queda duda alguna que la actuación de los magistrados se opuso a las sanas prácticas de legalidad y moralidad al resolver a la fuerza un proceso en el que se encontraban debidamente recusados (...) burlando de manera clara y contundente normas de orden público (...) los magistrados han manifestado un interés directo en la resolución de este caso y otros de mi representada (...)".* (El énfasis se añade). Al no tramitarse la recusación, perdieron competencia para dictar sentencia, que es nula. En el tercer incidente, el abogado Luis Carlos García Rivera insiste, en relación con la consideración de que las codemandadas forman parte de un grupo de interés económico, que la Sala usó argumentos *"sin valor jurídico ni sustento probatorio"*, pues citó un reglamento de la Superintendencia General de Entidades Financieras relacionado con los límites de crédito a personas individuales y de interés económico, orientado a una actividad particular y distinta, de modo que tiene preocupación y *"tristeza"* por la *"carencia de análisis y de verdaderos fundamentos legales"* de ambas sentencias, lo que da cuenta

de falta de fundamentación e incongruencia.

II. En primer término, es preciso deslindar que estas gestiones han de ser tramitadas y resueltas con base en la normativa dispuesta por el Código Procesal Civil vigente, a tenor de lo dispuesto en sus Transitorios I y II, -norma que, además, es la invocada por el incidentista como base de su gestión- en tanto el Código Procesal Contencioso Administrativo carece de regulación al respecto, de modo que, en virtud de lo dispuesto por su numeral 220, corresponde acudir a la normativa procesal común, en virtud de su carácter supletorio para esta materia. Ahora bien, en cuanto a sus alegatos, es claro que el primer y tercer incidente, critica -o pretende hacerlo- el fondo de la sentencia no. 2017-F-S1-2020 de esta Sala de las nueve horas del 25 de junio de 2020. En resumen, alega lo siguiente: 1. falta de análisis de su recurso de casación -sin precisar qué agravio fue soslayado-, 2. improcedencia de la condena en daños y perjuicios, 3. la conducta de su representada no puede calificarse de dolosa, 4. la contraparte nunca solicitó la resolución, por lo que no podían otorgársele daños y perjuicios, 5. el criterio pericial no es válido, 6. se resolvieron sus alegatos -que no detalla- en pocas líneas, lo que demuestra falta de análisis, 7. en determinados considerandos del fallo no hubo razonamiento -lo que justifica únicamente en su dicho- y; 8. las accionadas no forman parte de un grupo de interés económico. Su tercer incidente, valga aclarar, gira únicamente en torno a este último aspecto. Ahora, en el segundo, reclama la nulidad del fallo por una recusación pendiente, el planteamiento de una queja ante Corte Plena que, según admite, fue rechazada y el trámite de una denuncia penal no especificada.

III. Las gestiones incidentales son inadmisibles, por las siguientes razones.

Según el artículo 152 inciso 3) del Código Procesal Contencioso Administrativo, las sentencias de esta Sala tan sólo admiten recurso de revisión, no así, gestiones incidentales, lo que torna inadmisible los incidentes planteados. A la misma respuesta se arriba, además, por el cauce de la normativa procesal civil común. Nótese que conforme al artículo 33.3 del Código Procesal Civil vigente, la nulidad, por vía incidental, luego de la emisión de la sentencia firme, sólo puede alegarse en procesos en los que no proceda la revisión. Según el artículo 72 ibídem, la revisión procede contra pronunciamientos que tengan efecto de cosa juzgada material. La sentencia del proceso ordinario -o de conocimiento- produce cosa juzgada material (numeral 64 ibídem), de modo que sólo admite recurso de revisión, no así, incidente de nulidad. Es decir, desde ambas normativas, la resolución impugnada sólo podría ser controvertida por la vía del recurso de revisión -a través de las causales de control dispuestas para ello- y no mediante incidentes de nulidad. Esto hace que los incidentes sean inadmisibles. Ahora, aún obviando lo anterior, y a mayor abundamiento de razones, conforme a la normativa procesal civil (aplicable en esta materia por su vocación supletoria ya señalada ante la falta de previsión en el ámbito procesal contencioso), la nulidad sólo puede decretarse cuando se cause indefensión (artículo 32.1). Ninguno de los alegatos contenidos en sus incidentes se orienta a evidenciar que el pronunciamiento de esta Sala, emitido con ocasión de su recurso de casación, le colocó en tal situación. Más bien sus reproches censuran -sin más fundamento que su dicho- el rechazo de su recurso, al tiempo que formula una serie de graves cargos relacionados con, según su dicho, conductas de estos integrantes alejadas del principio de imparcialidad de la persona juzgadora. Tales imputaciones, además de temerarias,

infundadas y, por demás, obcecadas al punto de usar epítetos desmesurados e irrespetuosos, pierden de vista que su labor profesional debió encausar la defensa de los intereses de sus patrocinados, por las vías y remedios legales disponibles, demostrando que el Ordenamiento amparaba sus planteamientos , todo lo cual no logró oportunamente. Por ello, equivoca la vía -y el tono- al criticar a este órgano con falacias ad hominem, sin demostrar, ni por asomo, desapego a la juridicidad en la resolución de este órgano. Así las cosas, sus planteamientos en realidad esconden una revocatoria contra el fallo, gestión inexistente dentro del ordenamiento costarricense -no existe la revocatoria de sentencias- por lo que, a la postre, también por estas razones, debería denegarse. Cabe recordarle al incidentista que, como él bien refiere, la queja que planteó contra la mayoría de quienes suscriben, ante Corte Plena, con ocasión de lo dedicido por esta Sala en un proceso arbitral, fue oportunamente rechazada (Sesión no. 02-19 del 21 de enero de 2019, Artículo XVIII y Sesión no. 13-19 del 25 de marzo de 2019, Artículo XXIV). Lo propio aconteció con la recusación, planteada el 02 de abril de 2019 en este asunto y rechazada en la resolución 48-F-S1-2021 de las 10 horas del 13 de enero de 2021 de esta Sala. Vale recordarle al recurrente que esa última gestión la justificó en que, según dijo, estando pendiente el análisis del recurso de casación que había planteado, no correspondía a los entonces integrantes emitir criterio sobre el fondo, por la pendencia de la queja ante Corte Plena. No obstante, contrario a si dicho, en el que faltó a la verdad, para entonces ya la queja había sido resuelta incluso por la vía de la reposición. Finalmente, respecto al proceso penal que menciona, conviene hacer una precisión. Esta Sala, según se dijo, emitió sentencia de fondo, en este asunto, en su fallo 2017-F-S1-2020

de las nueve horas del 25 de junio de 2020 . Para entonces, la mayoría de quienes suscribimos no teníamos noticia alguna de la denuncia que había sido formulada, ante la Fiscalía General de la República, por el señor Luis Carlos García Rivera -apoderado especial judicial de Verizon Information Services LLC-. Este dato obró en conocimiento de los denunciados hasta finales de agosto de ese año, con ocasión de la notificación que se nos hizo de la desestimación dictada por la Sala Tercera en su sentencia no. 2020-1007 de las 14 horas 12 minutos del siete de agosto de 2020, en la que se acogió la solicitud en tal sentido de la Fiscala General. Esa desestimación nos fue notificada -a los denunciados- a finales de ese mes de agosto de 2020, según se dijo, por lo que la sentencia de esta Sala, ahora combatida por la vía de varios incidentes de nulidad, se tomó sin tener noticia del proceso penal incoado por el señor García Rivera. Por ello, tal denuncia no puede ser insinuada como motivo de incompetencia subjetiva -por pérdida de imparcialidad- para emitir sentencia de fondo en este litigio, pues sólo era de conocimiento del denunciante, no así de los denunciados. Luego, pese a todas sus múltiples incidencias y gestiones dilatorias, no se constata -ni se constató- motivo alguno que afecte la competencia subjetiva de los integrantes de este órgano. Finalmente, es importante recordarle a la parte que sus gestiones extrajudiciales, en contra de la mayoría de los integrantes de este órgano, aparejadas a acusaciones de parcialidad, se han fundado únicamente en su dicho pues respecto de la queja y la recusación, no han ido acompañadas de una mínima demostración de desafuero subjetivo de alguna de las personas que integran este órgano en el cumplimiento de sus deberes constitucionales o legales, quienes nos hemos constreñido a resolver la controversia conforme a Derecho, a partir de los

planteamientos de las partes. Si esos planteamientos de alguno de los litigantes es deficiente, técnicamente endeble o simplemente contrario a la legalidad, no corresponde a este órgano resolver para satisfacer los intereses -o presiones- de alguna de las partes, sino de aquél a quien el ordenamiento ampara, pues esa es la función de la justicia encomendada a este órgano. En suma, por todas estas razones, el incidente, al margen de lo señalado previamente, tampoco sería admisible por el fondo.

POR TANTO

Se declaran inadmisibles los tres incidentes de nulidad. Regresen los autos, sin más dilación, al Tribunal de origen.

Luis Guillermo Rivas Loáiciga

Román Solís Zelaya                                    Rocío Rojas Morales

William Molinari Vílchez                              Damaris Vargas Vásquez

Rosalena