UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREJOS HERMANOS SUCESORES S.A.,<br><br>Plaintiff,<br><br>-against-<br><br>VERIZON COMMUNICATIONS INC.,<br><br>Defendant. | No. 1:21-cv-08928 (JLR)<br><br>**<u>OPINION & ORDER</u>** |

JENNIFER L. ROCHON, United States District Judge:

Trejos Hermanos Sucesores S.A. ("Trejos Hermanos" or "Plaintiff") commenced this action, subsequently removed from New York state court, to seek enforcement of a foreign money judgment (the "Judgment") entered against Verizon Communications, Inc. ("Verizon") in Costa Rica by the Tribunal Contencioso Administrativo y Civil de Hacienda (the "Tribunal Contencioso"). ECF No. 1. Now before the Court is Plaintiff's motion for summary judgment. ECF No. 51 ("Br."). For the following reasons, Plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

### I.  Factual Background

####   A.  The Relationship Between the Parties

Trejos Hermanos is a printing business established in Costa Rica in the early twentieth century that, over time, grew into a large printing house that distributed materials throughout the Caribbean and parts of Miami. ECF No. 62 ("Reply 56.1 Statement") ¶ 44.

In August 1999, a group called the "GTE Consortium" submitted a bid to participate in a procurement process hosted by the Instituto Costarricense de Electricidad ("ICE"), a Costa Rican public agency, to produce telephone directories in Costa Rica. *Id.* ¶ 46. The GTE Consortium won the bid and, in March 2000, ICE and the GTE Consortium executed a

contract (the "ICE Contract").  *Id.* ¶ 48.  The ICE Contract permitted the GTE Consortium to subcontract.  *Id.* ¶ 49.  GTE Corporation (the parent of GTE Consortium) "guaranteed the GTE Consortium's performance" at least as to GTE Consortium's contract with ICE.  *Id.* ¶¶ 49-50.  Following execution of the ICE Contract, GTE Corporation merged with Bell Atlantic Corporation.  *Id.* ¶¶ 3, 52.

On February 28, 2002, Trejos Hermanos entered into a "Master Purchase Agreement" (the "MPA") with an entity then named General Telephone Directory Company C por A, and which later changed its name to Verizon Information Services Costa Rica, LLC ("Verizon Costa Rica").  *Id.* ¶ 50-52.  Verizon Communications, Inc. ("Verizon"), the Defendant in this action, owns a 65% interest in Verizon International Holdings Inc., the parent company of Verizon Costa Rica.  *Id.* ¶ 3.

In 2004, ICE and Verizon Costa Rica disputed certain proposed modifications to the ICE Contract.  *Id.* ¶ 57.  Verizon Costa Rica proposed modifications and, having not received a response to its proposal, assumed that ICE did not disagree.  *Id.*  As a result, ICE initiated contractual-resolution proceedings and, ultimately, terminated the ICE Contract on June 1, 2005.  *Id.*  On September 2, 2005, Verizon Costa Rica informed Trejos Hermanos that Verizon Costa Rica was terminating the MPA.  *Id.* ¶ 58.

### B.  The Costa Rican Proceedings

On December 15, 2008, Trejos Hermanos filed a lawsuit against ICE, Verizon, and Verizon Costa Rica before the Tribunal Contencioso Administrativo y Civil de Hacienda in Costa Rica.  *Id.* ¶ 3.  After the proceedings, in which Verizon participated, the Tribunal Contencioso entered Judgment for Trejos Hermanos in the principal amount of USD 51,355,812, along with statutory adjustments for indexation, net interest, and legal fees.  *Id.* ¶ 7.

On September 4, 2017, Verizon filed an appeal to the Costa Rica Supreme Court of Justice (the "Supreme Court of Justice"), asserting several grounds of error. *Id.* ¶ 15. The Supreme Court of Justice heard argument on the appeal on June 25, 2020. *Id.* On appeal, Verizon argued that the MPA contained an arbitration clause that divested the Tribunal Contencioso of subject-matter jurisdiction. *Id.* ¶ 17. The Supreme Court of Justice rejected this argument, holding that the Tribunal Contencioso had subject-matter jurisdiction over these claims due to the claims' relationship with ICE, a public entity. *Id.* The Supreme Court of Justice also rejected Verizon's claim that the Tribunal Contencioso lacked subject-matter jurisdiction because the issues decided were matters of private law, not public law. *Id* ¶ 18. Verizon raised several other grounds for appeal that the Supreme Court of Justice considered and rejected, covering the interpretation of applicable law, the temporal scope of the damages calculation, the effect of contractual liability exclusions, the nature of subcontracting under Costa Rican law, the admissibility of certain expert testimony, the application of a statute of limitations, and a general objection to the trial court's assessment of the evidence. *Id.* ¶¶ 18-19. The parties agree that Verizon has exhausted its appellate rights in Costa Rica. *Id.* ¶ 20.

## II.    Procedural Background

On October 26, 2021, Trejos Hermanos filed a motion for summary judgment in lieu of complaint in the Supreme Court of the State of New York, pursuant to N.Y. C.P.L.R. Sections 3213 and 5303. ECF No. 1. Verizon removed the action to this Court on November 1, 2021 on the basis of diversity jurisdiction. *Id.* On November 15, 2021, Trejos Hermanos refiled its initial motion as a motion for summary judgment under Rule 56. ECF Nos. 11-12. On December 30, 2021, Verizon filed a motion under Rule 56(d) seeking certain discovery. ECF Nos. 26-27. The Court held oral argument on Verizon's Rule 56(d) motion on June 29, 2023. On June 29, 2023, the Court issued an opinion from the bench, denying Verizon's

motion for fact discovery but granting Verizon the opportunity for limited expert discovery. *See* ECF No. 51-13 ("Afternoon Tr.") at 2:3-7.  At the same time, the Court denied Trejos Hermanos's motion for summary judgment without prejudice to refiling after the discovery period concluded.  *See id.* at 13:2-5, 13:21-24.  The case was reassigned to the undersigned on September 22, 2022.  ECF No. 47.

Following the discovery period, Trejos Hermanos filed its renewed motion for summary judgment on October 31, 2022.  Br.  Verizon filed its opposition on December 5, 2022.  ECF No. 53 ("Opp.").  On December 16, 2022, Trejos Hermanos filed a letter motion requesting that the Court strike testimony of Marvin Cespedes cited in Verizon's summary judgment opposition brief and Rule 56.1 response.  ECF No. 58.  Verizon filed a letter response on December 21, 2022.  ECF No. 60.  On January 3, 2023, the Court granted in part and denied in part Trejos Hermanos's motion to strike, holding that for purposes of the instant summary judgment motion, the Court will disregard portions of the Cespedes declaration and references thereto in the accompanying filings to the extent that they offer testimony that is expert testimony (untimely disclosed) or impermissibly legal in nature.  ECF No. 63.  Trejos Hermanos filed its reply memorandum in support of its renewed motion for summary judgment on January 2, 2023.  ECF No. 61 ("Reply").  The Court held oral argument on the renewed motion for summary judgment on January 8, 2024.  ECF No. 72.  ("Tr.").  Verizon filed a letter with supplemental authority on January 9, 2024.  ECF No. 71.

## LEGAL STANDARDS

### I.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[T]he trial

court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he substantive law will identify which facts are material."  *Id.* "In determining whether there are genuine issues of material fact, [the Court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (citation omitted).

## II.    Enforcement of Foreign Judgments

Article 53 of the New York Civil Practice Law and Rules governs the enforcement of foreign country money judgments in New York.  *Servipronto De El Salvador, S.A. v. McDonald's Corp.*, 837 F. App'x 817, 819 (2d Cir. 2020) (summary order).  "Article 53 was designed to promote efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement in New York."  *Id.* (quotation marks and citations omitted); *accord CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 792 N.E.2d 155, 159 (N.Y. 2003).  "New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 239 (2d Cir. 2012) (citation omitted);

*accord Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 986

N.Y.S.2d 454, 457 (1st Dep't 2014).

"A party seeking recognition of a foreign country judgment has the burden of

establishing that [Article 53] applies to the foreign country judgment." N.Y. C.P.L.R.

§ 5302(c). Under New York law, foreign country judgments are enforceable when they are

"final, conclusive, and enforceable" in their issuing jurisdiction. *Id.* § 5302(a)(2); *see*

*Servipronto*, 837 F. App'x at 819; *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 803

(S.D.N.Y. 2017). New York's enforcement of foreign judgments "does not apply to a foreign

country judgment . . . to the extent the judgment is: (1) a judgment for taxes; (2) a fine or

penalty; or (3) a judgment for divorce, support or maintenance, or other judgment rendered in

connections with domestic relations." N.Y. C.P.L.R. § 5302(b).

"Generally, a foreign money judgment is to be recognized in New York under article

53 unless a ground for nonrecognition under CPLR 5304 is applicable." *John Galliano, S.A.*

*v. Stallion, Inc.*, 930 N.E.2d 756, 758 (N.Y. 2010). Once the party seeking enforcement of the

foreign judgment has met its burden under Section 5302, the burden shifts to the "party

resisting recognition of a foreign country judgment" to "establish[] that a ground for non-

recognition stated in [C.P.L.R. Sections 5304(a) or (b)] exists." N.Y. C.P.L.R. § 5304(c).[1]

---

[1] In 2021, New York revised Section 5304 to impose the burden of proof for establishing a
specific ground for non-recognition upon the party raising it; the burden of proof was not
addressed in the prior act. 2021 N.Y. Sess. Laws Ch. 127 (S. 523-A); *see also Malherbe v.*
*Oscar Gruss & Sons, Inc.*, 21-cv-10903 (MKV), 2023 WL 199425, at *3 (S.D.N.Y. Jan. 17,
2023) (discussing amendment to Section 5304). The amended provision also added two
discretionary grounds for denying recognition of foreign country judgments: (1) "the
judgment was rendered in circumstances that raise substantial doubt about the integrity of the
rendering court with respect to the judgment" or (2) "the specific proceeding in the foreign
court leading to the judgment was not compatible with the requirements of due process of
law." 2021 N.Y. Sess. Laws Ch. 127 (S. 523-A). Verizon states that this was a "significant
change in the law" and accuses Trejos Hermanos of "peddl[ing] outdated case law from when
courts could not consider case-specific issues." Opp. at 3. However, according to a study

Specifically, per Section 5304, the Court "may not recognize a foreign country judgment if: 1. the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; 2. the foreign court did not have personal jurisdiction over the defendant; or 3. the foreign court did not have jurisdiction over the subject matter." *Id.* § 5304(a).  Additionally the Court may, but "need not," recognize a foreign country judgment for a number of additional reasons, including when "the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case," "the judgment or the cause of action on which the judgment is based is repugnant to the public policy of [New York] or of the United States," "the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by a proceeding in that court," "the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment," and "the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law." *Id.* § 5304(b).

A judgment creditor "does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country judgment and converting it into a New York judgment.'" *Obra Pia Lte. v. Seagrape*

---

conducted by the Uniform Law Commission while the act to amend Section 5304 was pending, "a significant number of courts were considering the judicial fairness and integrity of the specific proceedings leading to the foreign country judgment, either by ignoring the 'system' language of the 1962 Act provision or considering the individual circumstances of the case despite that language.  Thus, the addition . . . of these two discretionary provisions brings the statute in line with actual practice in the courts."  Letter from Uniform Law Commission dated June 10, 2021, 2021 N.Y. Sess. Laws Ch. 127 (S. 523-A).  The Court will apply Section 5304 as amended, but the Court notes that it is still appropriate to consider cases applying the prior version of Section 5304 if they do not contravene the statute as amended.

*Invs. LLC*, No. 19-cv-07840 (RA), 2020 WL 5751195, at *18 (S.D.N.Y. Sept. 25, 2020)

(emphasis and citation omitted); *accord CIBC Mellon*, 792 N.E.2d at 159; *see also John*

*Galliano*, 930 N.E.2d at 759 ("If the above criteria are met, and enforcement of the foreign

judgment is not otherwise repugnant to our notion of fairness, the foreign judgment should be

enforced in New York under well-settled comity principles without microscopic analysis of

the underlying proceeding." (quoting *Sung Hwang Co., Ltd. v. Rite Aid Corp.*, 850 N.E.2d

647, 651 (N.Y. 2006))).

## DISCUSSION

The Court's analysis will proceed as follows.  First, the Court will examine the

applicability of N.Y. C.P.L.R. Sections 5302(a) and (b) to the Judgment.  Then, the Court will

examine the grounds for non-enforcement of the Judgment under N.Y. C.P.L.R.

Sections 5304(a) and (b).

## I. N.Y. C.P.L.R. § 5302(a)

Pursuant to N.Y. C.P.L.R. Section 5302(a), Article 53 "appl[ies] to a foreign country

judgment to the extent that such judgment: 1. grants or denies recovery of a sum of money;

and 2. under the law of the foreign country where rendered, is final, conclusive[,] and

enforceable."  There is no dispute between the parties that the Judgment grants a recovery of a

sum of money, and thus N.Y. C.P.L.R. Section 5302(a)(1) is met.

There is similarly no question of material fact that the Judgment is "final, conclusive,

and enforceable," as required under N.Y. C.P.L.R. Section 5302(a)(2).  Verizon's opposition

brief is wholly silent as to this requirement, *see generally* Opp., but Verizon states in its

opposition to Trejos Hermanos's statement of material facts that "the total amount [Trejos

Hermanos] is seeking to enforce is not a final amount that has been confirmed in a judgment

enforcement action in Costa Rica," Reply 56.1 Statement ¶ 23.

That the Judgment imposes an obligation to pay a principal sum and statutory adjustments does not create a genuine issue of material fact as to whether the Judgment is final, conclusive and enforceable.  To hold otherwise would render unenforceable any foreign judgment that awarded post-judgment interest.  Yet New York courts enforce foreign judgments that include additional sums such as interest.  *See, e.g*., *Shipcraft A/S v. Arms Corp. of the Phil.*, No. 150651/2012, 2013 WL 64915, at *6 (N.Y. Sup. Ct. Feb. 19, 2013) (granting plaintiff's motion for summary judgment in lieu of complaint recognizing and enforcing foreign judgment plus interest from date of foreign judgment to date of enforcement); *Dunster Props. Ltd. v. Roc Apparel Grp. LLC*, No. 0600895/2007, 2007 WL 4476792 (N.Y. Sup. Ct., Dec. 12, 2007) (enforcing foreign judgment plus interest through the entry of judgment).

Thus, Trejos Hermanos has met its initial burden to show that the monetary Judgment is final, conclusive, and enforceable in Costa Rica under Section 5302(a).

## II.   N.Y. C.P.L.R. § 5302(b)

A foreign judgment is unenforceable "to the extent the judgment is: 1. a judgment for taxes; 2. a fine or penalty; or 3. a judgment for divorce, support or maintenance, or other judgment rendered in connection with domestic relations."  N.Y. C.P.L.R. § 5302(b).  There is no question that the Judgment is not a judgment for taxes, nor is it a judgment related to domestic relations, and therefore, N.Y. C.P.L.R. Sections 5302(b)(1) and 5302(b)(3) do not preclude enforcement.

Verizon argues that because "the damages are disproportionate, duplicative, and not tethered to actual injury, they are *punitive* in character," and therefore constitute a "fine or penalty" under N.Y. C.P.L.R. Section 5302(b)(2).  Opp. at 24 (quotation marks and citations omitted).  The Court is not persuaded.

Verizon has not cited any facts or law that create a genuine issue of material fact as to whether the Judgment constitutes a fine or penalty. Rather, in the underlying proceedings, Trejos Hermanos asserted eight categories of damages, which it pleaded as "damages incurred." ECF No. 51-17 at 5. At trial, those damages were substantiated with expert evidence. *See id.* at 6. The Tribunal Contencioso not only reviewed Trejos Hermanos's damages evidence, but also appointed an independent expert to review the damages claims. *Id.* at 76. The independent expert ratified the original report. *See id.* at 72. Then, the Tribunal Contencioso explained that the claims asserted were "purely compensatory" in nature. *Id.* at 63. Verizon had the opportunity to examine both Trejos Hermanos's expert and the Tribunal Contencioso's independent expert at trial did not do so. *See id.* at 77. Verizon also had the opportunity to present contrary evidence on damages at trial, but chose not to. *See id.*; ECF No. 54-16 ("Garro Tr.") at 158:19-159:15. As acknowledged by Verizon at oral argument, Verizon had the opportunity to rebut the damages award, which was upheld by the Supreme Court of Justice, applying Costa Rican law. Tr. at 29:25-30:5.

"[T]he test for whether a judgment is a fine or penalty is determined by whether its purpose is remedial in nature, with its benefits accruing to private individuals, or it is penal in nature, punishing an offense against public justice." *Hyundai Sec. Co. v. Lee*, 182 Cal. Rptr. 3d 264, 270 (Cal. Ct. App. 2015) (applying California's version of relevant uniform act). Here, the Judgment is "purely compensatory," not remedial or penal. ECF No. 51-17 at 63. The Judgment was never discussed as a fine or penalty by either of the Costa Rican courts, *see generally* ECF Nos. 51-17 (Tribunal Contencioso opinion), 51-18 (Supreme Court of Justice opinion), and Verizon does not cite to any evidence that establishes that the Judgment was imposed to act as a fine or penalty, *see generally* Opp.

The cases cited by Verizon are plainly inapposite.  *LeRoy v. Sayers* is not related to enforcement of a foreign judgment, but rather to a New York court's decision on whether to enforce a liquidated damages clause under New York law.  635 N.Y.S.2d 217, 222 (1st Dep't 1995).  The Tribunal Contencioso's award here was not based on a liquidated damages clause. Additionally, while the court in *Vinogradov v. Sokolova* did not enforce an aspect of a foreign judgment that constituted a penalty, the foreign court had explicitly described that portion as a penalty, and as "disproportionate to damages caused."  177 N.Y.S.3d 464, 469 & n.2 (Sup. Ct. 2022).  In sum, Verizon has not presented any evidence that creates a material issue of fact as to whether the damages awarded by the Tribunal Contencioso constitute a "fine or penalty."[2]

## III.    N.Y. C.P.L.R. § 5304(a)

Because Defendants have met their burden under N.Y. C.P.L.R. Section 5302 regarding the applicability of Article 53, the Court presumptively "shall recognize a foreign country judgment."  N.Y. C.P.L.R. § 5303(a).  The burden then shifts to Verizon to prove a ground for non-enforcement of the Judgment, *id.* § 5304(c), which the Court will next consider.

A court "may not recognize a foreign country judgment if: 1. the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law; 2. the foreign court did not have personal jurisdiction over the defendant; or 3. the foreign court did not have jurisdiction over the subject matter."  *Id.* § 5304(a).  Verizon does not argue that Costa Rica's judicial system does not provide impartial tribunals or procedures compatible with the requirements of due

---

[2] The Court further examines Verizon's related due process and public policy arguments regarding allegedly duplicative, disproportionate, and punitive damages later in this opinion. *See infra* Discussion § IV.C.

process or that the Costa Rican court did not have personal jurisdiction over it, and therefore, N.Y. C.P.L.R. Sections 5304(a)(1) and 5304(1)(2) do not apply.

Rather, pursuant to N.Y. C.P.L.R. Section 5304(a)(3), Verizon argues that "the judgment cannot be recognized because the [Tribunal Contencioso] 'did not have jurisdiction over the subject matter.'" Opp. at 24 (quoting N.Y. C.P.L.R. § 5304(a)(3)). Specifically, Verizon states that the Tribunal Contencioso lacked jurisdiction because "(1) its jurisdiction is limited to disputes involving public agencies, yet ICE was unconnected to the merits of [Trejos Hermanos]'s claims," and "(2) the dispute should have been arbitrated." *Id.* at 25. As the "party resisting recognition of a foreign country judgment," Verizon bears "the burden of establishing that [this] ground for non-recognition . . . exists." N.Y. C.P.L.R. § 5304(c). Verizon's arguments fail.

Verizon had the opportunity to – and did – litigate both subject matter jurisdiction challenges in the Costa Rican courts. The Supreme Court of Justice rejected Verizon's arguments related to the Tribunal Contencioso's jurisdiction over disputes involving public entities. ECF No. 51-18 at 2-3. Specifically, the Supreme Court of Justice affirmed that the Tribunal Contencioso had subject-matter jurisdiction over the claims at issue here due to their relationship to ICE, a public entity. *Id.* As will be discussed in more detail herein, *see infra* at Discussion § V, the Supreme Court also considered and rejected Verizon's jurisdictional arguments based on the application of the arbitration clause, *id.* at 2; ECF No. 51-17 at 51-53.

When considering enforcement of foreign judgments, the Court "grant[s] preclusive effect to the [foreign court's] finding" where the defendant "had the opportunity to fully and fairly litigate the . . . issue before the [foreign court]." *ICC Chem. Corp. v. TCL Indus. (Malay.) SDN*, 206 F. App'x 68, 70 (2d Cir. 2006) (summary order). As in *ICC Chemical*, the Court will not revisit the foreign court's determination of its own jurisdiction. *Id.* (applying

principles of collateral estoppel "as a matter of comity" and declining to revisit Singapore

court's jurisdictional determinations); *see also infra* at Discussion § V.  The Court is satisfied

that there are no genuine issues of fact related to subject matter jurisdiction that would

preclude the enforcement of the Judgment here.

**IV.    N.Y. C.P.L.R. §§ 5304(b)(8) and 5304(b)(3)**

The Court next examines the numerous discretionary grounds for non-enforcement

under N.Y. C.P.L.R. Section 5304(b) raised in Verizon's opposition brief.  Verizon argues

that the Costa Rican proceedings violated due process and public policy and therefore should

not be recognized.  Opp. at 8-9 (citing N.Y. C.P.L.R. §§ 5304(b)(8), 5304(b)(3)).  Verizon

relies on Section 5304(b)(8) that provides a discretionary ground for non-enforcement where

"the specific proceeding in the foreign court leading to the judgment was not compatible with

the requirements of due process of law" and Section 5304(b)(3) that provides a further

discretionary ground for non-enforcement where the "judgment or the cause of action on

which the judgment is based is repugnant to the public policy of this state or of the United

States."  N.Y. C.P.L.R. §§ 5304(b)(8), 5304(b)(3).

Specifically, Verizon argues that the Costa Rican proceedings violated (1) the legal

maxim *pacta sunt servanda*, (2) the principle of corporate separateness, and (3) proscriptions

against duplicative, disproportionate, and punitive damages.  *See id.* at 8-21.  As discussed

above, Verizon bears the burden of showing that one of these grounds for non-recognition

exists.  N.Y. C.P.L.R. § 5304(c).  Further, even if the Court finds that one of these grounds

exists, whether to recognize the judgment is still left to the Court's discretion.  *Id.* § 5304(b).

Several legal standards apply to public-policy arguments raised by Verizon.  First,

under New York law, it is only in the "rare[]" case that a judgment is so "inherently vicious,

wicked or immoral, and shocking to the prevailing moral sense" as to not be recognized on

public-policy grounds.  *Sung Hwan Co.*, 850 N.E.2d at 649; *accord Regional Municipality of York v. LeBlanc*, 171 N.Y.S.3d 665, 668 (4th Dep't 2022); *Assoun v. Assoun*, No. 14-cv-01368 (PAC), 2015 WL 110106, at *7 (S.D.N.Y. Jan. 7, 2015).  "New York courts have interpreted the public policy exception very narrowly, following Judge Cardozo's articulation that such an exception operates only when 'some fundamental principle of justice' is at stake, 'some prevalent conception of good morals, some deep-rooted tradition of the common weal.'"  *Ameropa AG v. Havi Ocean Co.*, No. 10-cv-03240 (TPG), 2011 WL 570130, at *3 (S.D.N.Y. Feb. 16, 2011) (quoting *Loucks v. Standard Oil Co. of N.Y.*, 120 N.E. 198, 202 (N.Y. 1918)).   In examining Verizon's public-policy arguments, the Court will apply this standard.

Additionally, when a New York court considers whether to recognize a foreign judgment, due process under Article 53 is concerned primarily with "*procedural* due process, not *substantive* due process."  *Tropp v. Corp. of Lloyd's*, No. 07-cv-00414 (NRB), 2008 WL 5758763, at *15 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 385 F. App'x 36 (2d Cir. 2010) (summary order); *see also Soc'y of Lloyd's v. Mullin*, 255 F. Supp. 2d 468, 477 (E.D. Pa. 2003) (with respect to recognition of foreign judgments, "it is *procedural* rights that are at the heart of due process."), *aff'd*, 96 F. App'x 100 (3d Cir. 2004).  Further, it is not necessary that the due process rights in the foreign tribunal match precisely the due process rights that might be afforded in New York.  For example, in *Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Brothers Co.*, the court held that the procedures in a Bahraini tribunal provided sufficient process to enforce a judgment under Article 53 because the defendant was "afforded notice and an opportunity to be heard in the underlying litigation, [that is,] the basic requisites of due process" even though the foreign tribunal's process did not "exactly match those of New York."  957 N.Y.S.2d 602, 604-05 (Sup. Ct. 2012), *aff'd*, 973 N.Y.S.2D 197 (1st Dep't 2013); *see S.B. v.*

*W.A.*, 959 N.Y.S.2d 802, 802-03 (N.Y. Sup. Ct. 2012) *aff'd sub nom. Badawi v. Alesawy*, 24

N.Y.S.3d 683 (2d Dep't 2016) (enforcing foreign judgment under Article 53 when Abu Dhabi

tribunal's procedures did not exactly track those of New York, but were compatible with due

process of law).  Even under the authority cited by Verizon, the "international concept of due

process" applies in the foreign judgment recognition context, *see Soc'y of Lloyd's v. Ashenden*,

233 F.3d 473, 477 (7th Cir. 2000); *Osorio v. Dole Food Co.*, 665 F. Supp. 2d 1307, 1327 (S.D.

Fla. 2009), *aff'd sub nom. Osorio v. Dow Chem. Co.*, 635 F.3d 1277 (11th Cir. 2011) (per

curiam), which "is a less stringent due process than required under American jurisprudence,"

*Soc'y of Lloyds v. Webb*, 156 F. Supp. 2d 632, 641 (N.D. Tex. 2001), *aff'd*, 303 F.3d 325 (5th

Cir. 2002).[3]

---

[3] At oral argument, Verizon argued that the Court has the obligation to examine the
underlying judgment not just as to procedural due process, but also as to substantive due
process, Tr. 25:18-26:11, and pointed the Court to *Osorio*, 665 F. Supp. 2d 1307, *Falcon
Manufacturing (Scarborough) Ltd. v. Ames*, 278 N.Y.S.2d 684 (N.Y. Civ. Ct. 1967), and *Bank
Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995).  Although the Court does not hold that
substantive due process may never be relevant for an Article 53 enforcement action, the Court
is not persuaded by Verizon's arguments related to substantive due process under Article 53,
and Verizon's cases are clearly distinguishable.

For example, in *Osorio*, the foreign judgment was obtained based on an irrefutable
presumption of causation.  665 F. Supp. 2d at 1327-29.  The court determined that such an
irrefutable presumption did not afford the defendants available "procedures" to defend
themselves.  *Id.*  There is no argument that legal barriers akin to the causation presumption in
*Osorio* stripped Verizon of its due process rights before the Costa Rican courts.  Additionally,
in the *Falcon* case, the defendant "had absolutely no contact with" the jurisdiction that had
imposed the foreign judgment.  278 N.Y.S. 2d at 336.  The court therefore held that
enforcement of the foreign judgment would violate "concepts of fair play and substantial
justice . . . and, additionally, that minimum contact necessary to satisfy the requirements of
due process is lacking."  *Id.*  Not the case here.  Finally, in *Bank Melli*, the Ninth Circuit
declined to enforce a foreign judgment against an American that was rendered in Iran
following proceedings in the mid-1980s.  58 F.3d at 1408.  Based on contemporary
Department of State reports, the court determined that an American, like the defendant in that
case, "could not possibly have obtained a fair hearing before the courts of Iran." *Id.* at 1412.
There is no suggestion that Verizon could not possibly receive a fair trial before a Costa Rican
court and indeed Verizon's expert acknowledges that the justices on the Supreme Court of

**A.**    *Pacta Sunt Servanda*

Verizon first invokes the legal maxim *pacta sunt servanda* – "let all agreements be honored" – and argues that the Judgment should not be enforced because Verizon was held "liable for breaching [the MPA], to which *it was not a party*" based on the Costa Rican court's application of the "economic interest group theory" under Costa Rican law.  Opp. at 10-11.  The Court does not find this argument persuasive.

It is not disputed that the economic interest group theory of liability is viable in Costa Rica and was applied by the Costa Rican courts here.  In its Rule 56(d) motion, Verizon acknowledged that the economic interest group theory applies "when 'a group of individuals or legal entities maintain common links and interests and coordinate their activities to achieve a certain common objective' and 'there is control, autonomy, and unity of behavior in the market.'" ECF No. 27 ("Def.'s Rule 56(d) Mot.") at 7-8 (citation omitted).  Verizon's expert further concedes that the economic interest group theory has been cited in over 2,000 published decisions of Costa Rican courts.  *See* Garro Tr. at 115:1-119:19.

While Verizon argues that the Costa Rican courts misapplied the economic interest group theory, that is not for this Court to revisit.  The Costa Rican courts applied a doctrine recognized under Costa Rican law and even if a New York court may have evaluated the extension of liability to Verizon differently, in proceedings under Article 53, New York courts do not reexamine judgments imposed by foreign courts merely because they may differ from how a New York court may rule.  *See, e.g.*, *Korea Deposit Ins. Corp. v. Mina Jung*, No. 653744/2015, 2018 WL 6687238, at *3 (N.Y. Sup. Ct. Dec. 17 2018) (declining to reexamine judgment imposed by South Korean court despite accusation from defendants that the cause of

---

Justice who upheld the Judgement were generally "well regarded" and had "good reputation[s]."  Garro Tr. 129:10-133:20.

action underlying the foreign judgment rested upon an "absurd legal premise," because the "underlying principle [wa]s not repugnant to the principles which underpin New York law"); *Drexel Burnham Lambert Grp. Inc. v. Galadari*, 610 F. Supp. 114, 118 (S.D.N.Y.) ("Under New York law, . . . foreign decrees and proceedings will be given respect . . . even if the result under the foreign proceeding would be different than under American law."), *aff'd in part, vacated in part on other grounds*, 777 F.2d 877 (2d Cir. 1985).

Verizon further argues that the Costa Rican proceedings violated *pacta sunt servanda* "by determining that while [Verizon] *was* responsible under the MPA as though it had agreed to it, [Verizon] *could not* invoke the MPA's arbitration clause or liability waiver." Opp. at 11. The Court is again unpersuaded. The Tribunal Contencioso found that the liability waiver was "null and void" where the breaching party engaged in "willful misconduct" under Article 701 of the Costa Rica Civil Code. ECF No. 51-17 at 51-53. And as was affirmed by the Supreme Court of Justice, the Tribunal Contencioso also determined that it had jurisdiction over the dispute notwithstanding the arbitration clause due to the presence of ICE and the claims invoking the "financial liability of the Public Administration." ECF No. 51-18 at 2. The application of the arbitration clause and the liability waiver are solidly questions of Costa Rican law which were determined by the courts in Costa Rica. In considering enforcement of foreign judgments, the Court "grants preclusive effect to the [foreign court's] finding" where the defendant "had the opportunity to fully and fairly litigate the . . . issue before the [foreign court]." *ICC Chem.*, 206 F. App'x at 70 (applying principles of collateral estoppel "as a matter of comity" and declining to revisit Singapore court's jurisdictional determinations).

The contract was interpreted by the Costa Rican courts, in accordance with Costa Rican law, and the particular application (or not) of *pacta sunt servanda* in this case is not "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Sung*

*Hwan Co.*, 850 N.E.2d at 649 (citation omitted).  It thus cannot be said that "the judgment or the cause of action on which the judgment is based is repugnant to the public policy of [New York] or of the United States."  N.Y. C.P.L.R. § 5304(b)(3).

With respect to due process, Verizon cites its international-law expert for the proposition that Verizon lacked due process based on the Costa Rican courts' purported failure to properly invoke *pacta sunt servanda*.  Opp. at 11-12.  The Court does not agree. First, Verizon was provided with procedural due process.  Verizon received notice of the claims against it, was represented by counsel in the Costa Rican proceedings, presented evidence, and had the opportunity to (and did) appeal that decision to the Costa Rican Supreme Court of Justice.  *See* Garro Tr. at 139:15-143:15.  Despite its due process arguments, "[Verizon] was afforded an opportunity to contest these terms . . . in the [Costa Rican] courts, but [it] lost on the merits."  *Mullin*, 255 F. Supp. 2d at 477; *see id.* (enforcing foreign judgment because, among other things, the "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest," and party opposing enforcement was given an opportunity to contest the issues in foreign court (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)).  The question before the Court is whether "the specific proceeding in the foreign court leading to the judgment was . . . compatible with the requirements of due process of law," not whether the Court would have interpreted the Agreements in precisely the same way.  N.Y. C.P.L.R. § 5304(b)(8); *see Korea Deposit Ins. Corp.*, 2018 WL 6687238, at *3 (court is not tasked with "examining the appropriateness of the [foreign] court's ruling" during an enforcement action brought under Article 53).

Second, any contrary expert testimony proffered by Verizon does not create a question of fact as to whether procedural due process was afforded here.  That is a legal assessment for

the Court. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48-49 (S.D.N.Y. 2016) ("[C]ourts exclude expert testimony that 'provides legal opinions, legal conclusions, or interprets legal terms; those roles fall solely within the province of the court.'" (original brackets omitted) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005))); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001) (a witness offered as a foreign law expert may provide limited legal opinions as to foreign law, but may not offer legal conclusions).

For all of these reasons, the Court in its discretion declines to conclude that the Judgment should not be enforced pursuant to N.Y. C.P.L.R. Sections 5304(b)(3) and (8) based on Verizon's *pacta sunt servanda* arguments.

### B.  Corporate Separateness

Verizon next argues that the Judgment "violates U.S. and New York public policies by disregarding corporate form in a transparent attempt to find a deep pocket." Opp. at 14. The Court again does not agree.

First, the Court agrees with Trejos Hermanos that any New York policy with respect to corporate governance, as applied in this case, is not the type of policy that would render the Costa Rican court's analysis of the economic group interest theory (and, thus, the Judgment) "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." *Sung Hwan Co.*, 850 N.E.2d at 649.

Verizon does not cite, nor has the Court found, any case where a New York court declined to recognize a foreign judgment because it offended the principle of corporate separateness. To the contrary, in *LeBlanc*, the court enforced a Canadian judgment despite the defendants' argument that the Canadian court disregarded the corporate form in exercising personal jurisdiction over the defendants. No. E2020004076, slip op. at 4 (N.Y. Sup. Ct. Dec.

19

18, 2020) (explaining that the defendants' argument that the Canadian court "improper[ly] disregard[ed] . . . corporate form" thus "failing to comport with New York's principles and law" was "without merit" because defendants had appeared in Canadian action and moved to dismiss on jurisdictional grounds and lost on those arguments in Canada), *aff'd*, 171 N.Y.S.3d 665.

Verizon's reliance on its expert testimony that "as a matter of international law, [Verizon] was not afforded due process," because of the Costa Rican court's alleged failure to recognize the corporate form, Opp. at 15, is also unpersuasive. Verizon was named in the Costa Rican proceedings, was represented by sophisticated counsel, and litigated the issues at hand in Costa Rica from the Tribunal Contencioso through the Supreme Court of Justice. As explained in more detail above, the question before the Court is whether "the specific proceeding in the foreign court leading to the judgment was . . . compatible with the requirements of due process of law," not whether the Court would have interpreted the Agreements in exactly the same way. N.Y. C.P.L.R. § 5304(b)(8); *see Standard Chartered Bank*, 957 N.Y.S.2d at 604-05. Furthermore, foreign judgments are enforceable even when foreign law is "more expansive" than New York law. *S.B.*, 959 N.Y.S.2d at 821.

In sum, Verizon has not persuaded the Court that the "judgment or cause of action on which the judgment is based is repugnant to public policy" nor that the "specific proceedings in the foreign court . . . were not compatible with the requirements of due process of law" based on "corporate separateness." The Court in its discretion declines to invoke N.Y. C.P.L.R. Sections 5304(b)(3) and (8) based on Verizon's corporate separateness arguments.

### C. Prohibition on Duplicative, Disproportionate, or Punitive Damages

Next, Verizon argues that the Judgment "violate[s] due process and public policy prohibiting duplicative, disproportionate, or punitive damages." Opp. at 16-21. The test for

enforcement of a foreign judgment, including the calculation of damages, "is not whether the foreign law on which the judgment depends is perfectly congruent with domestic law on the same subject, or whether the identical judgment could have been obtained in New York on the same facts." *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 406 F. Supp. 2d 274, 280 (S.D.N.Y. 2005), *rev'd on other grounds*, 489 F.3d 474 (2d Cir. 2007).  Instead, as explained above, the test is whether Verizon has met its burden to establish that the Judgment or cause of action is "repugnant" to public policy, N.Y. C.P.L.R. § 5304(b)(3), or the specific proceeding in the foreign court was "not compatible with the requirements of due process of law," *id.* § 5304(b)(8).

Courts invoke Article 53 to enforce foreign judgments that relate to causes of action that do not exist in New York, *e.g.*, *S.B.*, 959 N.Y.S.2d at 821 (judgment enforceable where foreign law is "more expansive than the laws of New York" in context of post-nuptial contract entered into during Islamic marriage ceremony), and to enforce awards of damages calculated with methods that would not be applied in New York, *e.g.*, *Sarl Louis Feraud*, 406 F. Supp. 2d at 278-80 (although "New York law disfavors contractual liquidated damages clauses that impose a penalty for breach and are excessive in relation to actual damages . . . this Court will not second guess the [foreign] court's analysis of the record before it to determine whether the court has properly applied its own principle").  This is because "[u]nder New York law, . . . foreign decrees and proceedings will be given respect . . . even if the result under the foreign proceeding would be different than under American law." *Drexel Burnham Lambert*, 610 F. Supp. at 118.

Verizon also cites its international-law expert for the proposition that "[i]nternational standards of due process . . . require that damages not be 'disproportionate, duplicative, speculative,' or 'punitive.'"  Opp. at 16.  Verizon claims that the damages awarded by the

Tribunal Contencioso were "double recoveries" because they improperly calculated damages, including by awarding expectation and reliance damages.  Opp. at 16; Tr. at 28:25-29:16. However, Verizon had the opportunity to contest the damages calculations during the underlying Costa Rican proceedings.  Garro Tr. at 158:19-159:15.  There, Trejos Hermanos sought to recover "damages incurred," substantiated the damages at trial, a court-appointed expert agreed with Trejos Hermanos's approach, and the Tribunal Contencioso entered judgment for Trejos Hermanos.  ECF No. 51-17 at 5, 63, 71.  Verizon received notice of these proceedings, was represented by counsel, had the opportunity to present evidence, and could have presented contrary damages arguments at the time (although it chose not to).  *Id.* at 77; Garro Tr. at 158:19-159:15, 139:15-143:15.  As to the calculation of damages, Verizon received the process it was due.  *See Mullin*, 255 F. Supp. 2d at 477 (enforcing foreign judgment because, among other things, the "root requirement" of due process is "that an individual be given an opportunity before a hearing before he is deprived of any significant property interest" and party opposing enforcement was given an opportunity to contest the issues in foreign court (quoting *Fuentes*, 407 U.S. at 82, 92 (1972))).

The cases cited by Verizon are not persuasive.  For example, Verizon cites to *Trustees of Columbia University in City of New York v. D'Agostino Supermarkets, Inc.* for the proposition that when "a liquidated damages clause is 'grossly disproportionate to the amount of actual damages' it is unenforceable."  Opp. at 16 (quoting 162 N.E.3d 727, 731 (N.Y. 2020)).  But that case did not implicate enforcement of a foreign judgment and was related to a penalty late fee of over 2000% per year.  *See* 162 N.E.3d at 730.  Verizon also cites *Rocanova v. Equitable Life Assurance Society of United States* for the proposition that "public policy does not permit 'punitive' awards for 'an ordinary breach of contract.'"  Opp. at 16 (quoting 634 N.E.2d 940, 943 (N.Y. 1994)).  But *Rocanova* similarly was not related to

enforcement of a foreign judgment and instead involved the potential application of punitive

damages in the case of a first-party insurance action.  *See* 634 N.E.2d at 942.

Even if contractual damages may not be calculated in the same way in a New York

court, the Court cannot say that the award of damages in this case, allegedly including reliance

and expectation damages, is repugnant to domestic law or counter to due process.  Thus, the

Court in its discretion does not find nonenforcement warranted under N.Y. C.P.L.R.

Sections 5304(b)(3) and (8) based on Verizon's arguments regarding duplicative,

disproportionate, or punitive damages.

## V.  N.Y. C.P.L.R. § 5304(b)(5)

Verizon next argues that the Court should not grant summary judgment for Trejos

Hermanos and enforce the Judgment because "the Costa Rican courts ignored the MPA's

binding arbitration agreement."  Opp. at 21.  N.Y. C.P.L.R. Section 5304(b)(5) provides that

the Court "need not recognize a foreign country judgment if . . . the proceeding in the foreign

court was contrary to an agreement between the parties under which the dispute in question

was to be determined otherwise than by a proceeding in that court."  Verizon invokes this

provision and argues further that even as a non-signatory to the arbitration clause, it "can

enforce an arbitration agreement under the circumstances here."  Opp. at 21-22 (citing

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d

Cir. 1999); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999);

and *Revis v. Schwartz*, 140 N.Y.S.3d 68 (2d Dep't 2020), *aff'd*, 185 N.E.3d 496 (N.Y. 2022)).

The Court agrees with Trejos Hermanos that whether the proceedings in Costa Rica

were contrary to the MPA's arbitration clause is a question of Costa Rican law.  Verizon, even

as a nonsignatory, participated in the litigation of this issue in Costa Rica, which was

ultimately decided by the Supreme Court of Justice.  *See* ECF Nos. 51-18, 51-19.  Verizon's

own expert concedes that the Costa Rican Supreme Court "has the final authority on that question of law in Costa Rica." Garro Tr. at 124:10-13. In this case, the Supreme Court of Justice rejected Verizon's arguments and held that the Tribunal Contencioso had subject-matter jurisdiction over the claims due to their relationship to ICE, a public institute, despite the existence of the arbitration clause. ECF No. 51-18 at 3.

As mentioned briefly earlier, the Second Circuit examined an analogous situation in *ICC Chemical Corp.*, 206 F. App'x at 68. There, TCL brought a breach-of-contract action against ICC in a Singapore court. *See id.* at 69. ICC appeared in the Singapore court and argued, among other things, that it lacked subject matter jurisdiction over the action because the parties had agreed to arbitrate any dispute in New York. *See id.* The Singapore court rejected ICC's argument and held that there was no applicable agreement to arbitrate. *See id.* ICC then filed an action pursuant to N.Y. C.P.L.R. Section 5304(b) in this district seeking a declaration that any judgment rendered by the Singapore court should be void *ab initio* and not subject to recognition in New York. *See id.* The district court dismissed the action, concluding that it "was not in a position" to reverse or set aside the Singapore court's specific finding that grounded its rejection of the defendant's jurisdictional argument. *Id.* The Second Circuit affirmed, holding it was "proper to grant preclusive effect" to the Singapore court's arbitrability determination "as a matter of comity." *Id.* at 70. The Second Circuit explained that "protracted discussion on [this] score [wa]s not necessary here because it [wa]s undisputed that [the party opposing enforcement of the foreign judgment] had the opportunity to fully and fairly litigate the arbitrability issue before the Singapore Court." *Id.*

Similarly, here, the Costa Rican courts expressly determined in a full and fair proceeding that the agreement to arbitrate did not apply, and that the Tribunal Contencioso had subject matter jurisdiction to decide the dispute. *See* ECF Nos. 51-17 and 51-19.

24

Additionally, as in *ICC Chemical*, Verizon had the opportunity to litigate the arbitrability issue before the Costa Rican courts. *Id.*; *see* Garro Tr. at 122:16-125:6 (Verizon's expert testifying that the Tribunal Contencioso "had the competence to decide whether or not the arbitration clause would deprive it of jurisdiction" and that "the First Chamber of the Supreme Court has the final authority on that question of law in Costa Rica"). After losing on the merits, "[Verizon] now seeks a second bite at the apple." *ICC Chem.*, 206 F. App'x. at 70. The argument that the proceedings violated the arbitration clause "is of no use to [Verizon] because . . . the [Costa Rican courts] determined that there was no agreement to arbitrate" that bound the Costa Rican court. *Id.* Therefore, as in *ICC Chemical*, the Court respects the Costa Rican courts' determination as to the applicability of the arbitration provisions.

The cases cited by Verizon are inapposite. In *Montebueno Marketing, Inc. v. Del Monte Foods Corp.-USA*, it was not disputed that there was a binding arbitration clause and that the challenged proceedings in the foreign jurisdiction were contrary to the agreement between the parties to arbitrate. *See* No. 11-cv-04977, 2012 WL 986607, at *1-2 (N.D. Cal. Mar. 22, 2012). It is therefore unsurprising that the U.S. court held that the foreign judgment should not be enforced since it was contrary to the binding arbitration clause, where neither party disputed the arbitration clause's applicability. *See id.* Similarly inapposite is *Tyco Valves & Controls Distribution GmbH v. Tippins, Inc.*, where the defendant who challenged enforcement of the foreign judgment did not respond to the foreign complaint, did not attend the proceedings before the foreign court, and only responded to the lawsuit at all by advising the foreign court of the existence of a binding arbitration provision. No. 04-cv-01626, 2006 WL 2924814, at *3 (W.D. Pa. Oct. 10, 2006). These cases differ from the situation at hand, where the issue of the scope and applicability of the arbitration provision was expressly

decided as a matter of Costa Rican law by the Supreme Court of Justice after protracted litigation in which both parties participated.

Verizon presses that courts "routinely refuse to recognize a judgment on arbitration clause grounds despite the foreign court reaching the issue," Opp. at 23, but the only two examples offered by Verizon, *Automotores Galindo, S.A. v. Ford Motor Co.*, No. 13-cv-23285, 2015 WL 4606561 (S.D. Fla. July 31, 2015), and *Nicor International Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357 (S.D. Fla. 2003), are similarly inapposite.  In *Automotores Galindo*, unlike here, the defendant "did not meaningfully participate in any proceedings in the underlying action before the [foreign trial court] except its continuous assertion that the matter should be heard by an arbitrator based on the parties' agreement."  2015 WL 4606561, at *5.  The *Automotores Galindo* court therefore distinguished the case from other cases (like *ICC Chemical*) that applied "[o]rdinary res judicata principles" to enforce foreign court judgments.  *Id.*

*Nicor* is even less analogous.  There, the court was asked to enforce the judgment of a Dominican court, and declined because: (1) the Dominican judgment was not for a "specific sum of money" as required by the enforcement statute; and (2) the Dominican proceeding was contrary to the parties' agreement to arbitrate.  292 F. Supp. 2d at 1365-71.  In that case, while the proceeding in the Dominican court was pending, the defendant sought arbitration of the same claims and prevailed.  *See id.* at 1362.  During the arbitration proceedings, the arbitrator made a finding as to the scope of the arbitration provision, and the *Nicor* court gave that finding preclusive effect as to the scope of the arbitration clause.  *See id.* at 1368-70.

Neither these cases, nor others cited by Verizon, convince the Court to depart from the approach set forth in *ICC Chemical.*  The Court therefore will not revisit the determination of

26

the Supreme Court of Justice under Costa Rican law regarding the scope of the arbitration

clause.[4]

## VI.   N.Y. C.P.L.R. § 5304(b)(7)

Verizon also argues, pursuant to N.Y. C.P.L.R. Section 5304(b)(7), that there are

"material factual questions that raise substantial doubt about the integrity of the rendering

courts with respect to the judgment."  Opp. at 25 (quotation marks and citations omitted).

Verizon states that "the countless errors and instances of unfairness. . . are so overwhelming

---

[4] At oral argument, Verizon's attorneys asserted that the "binding arbitration clause that clearly called for arbitration to be held in Puerto Rico under ICC rules, which implicate . . . the protections of the Federal Arbitration Act . . . ICC rules which on their face call for the arbitrators and not the court to make the initial determination of arbitrability."  Tr. at 19:11-18; *see also id*. at 20:7-16.  This argument was not raised in Verizon's underlying briefing on the motion for summary judgment and therefore the Court need not consider it.  *See McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 414 n.5 ("This Court need not consider arguments made for the first time . . . at oral argument."); *Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 62 (2d Cir. 2020) (summary order) (collecting cases for the proposition that the appellant "waived (or certainly forfeited)" an argument raised in oral argument by failing to raise it in his brief).

Even if the Court were to consider it because it was mentioned in Verizon's international law expert report that was referenced in Verizon's 56.1 statement, ECF No. 57 ¶¶ 92-94 (citing ECF No. 54-9 ¶¶ 7-8, 23), neither that argument nor the supplemental authority provided later by Verizon, *Olin Holdings Ltd. v. State*, 73 F.4th 92, 104-08 (2d Cir. 2023), and *Haythe v. Samsung Electronics America, Inc*. No. 23-cv-03509 (VEC), 2023 WL 4187562, at *3-4 (S.D.N.Y. June 26, 2023), alters the Court's conclusion.  Neither of these cases relate to enforcement of foreign judgments under Article 53.  Rather, they deal with arbitrability where the ICC rules are incorporated into an arbitration clause under a bilateral investment treaty and United States contract law, respectively, *Olin*, 73 F.4th at 97-98, 102; *Haythe*, 2023 WL 4187562, at *2.  They do not speak to the process under Costa Rican law.  Here, the MPA expressly provided that "[t]he construction, interpretation, and performance of this Agreement shall be governed by and construed in accordance with the laws of *Costa Rica*."  ECF No. 28-6 at § 35 (emphasis added).  The Tribunal Contencioso and the Supreme Court of Justice determined that, as a matter of Costa Rican law, the Tribunal Contencioso had jurisdiction over the dispute, notwithstanding the existence of the arbitration clause, due to the presence of ICE and the claims involving "the financial liability of the Public Administration."  ECF No. 51-18 at 2.  Finally, Verizon's own expert concedes that the Supreme Court of Justice had jurisdiction and final authority to decide whether the arbitration clause applied in this case.  Garro Tr. at 122:16-125:6.

that, on their face, they surely raise substantial doubt about the integrity of the rendering courts." *Id.*  Verizon further offers the testimony of Mr. Cespedes, the attorney who represented Verizon in Costa Rica, who, having lost below, somewhat unsurprisingly asserts that the "multiple errors and unfair rulings, as well as pre-existing relationships between [the] judges [in the Costa Rican court] and [Trejos Hermanos's] legal counsel, led him to believe the courts demonstrated bias and lacked integrity." *Id.*

"A foreign judgment may not be collaterally attached 'upon the mere assertion of the party that the judgment was erroneous in law or in fact.'" *Clarkson Co. v. Shaheen*, 544 F.2d 624, 631 (2d Cir. 1976) (quoting *Hilton v. Guyot*, 159 U.S. 113, 203 (1895)).  Allegations of legal error and speculation from Verizon's attorney about the integrity of the proceedings does not raise a genuine issue of material fact as to whether there is "substantial doubt" about the integrity of the Costa Rican proceedings.  Indeed, "Costa Rica has one of the more independent, advanced judicial systems in Latin America," *Canales Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 735 (E.D. La. 2002), and Verizon's own expert confirmed that the judges on the Supreme Court of Justice are competent and well-respected, *see* Garro Tr. 129:10-133:20.

The Court explained in detail above the due process that Verizon received in Costa Rica in connection with these proceedings, including the opportunity to appear through counsel, present evidence, and appeal decisions to the Supreme Court of Justice.  *See infra* at Discussion § IV.  Even if the process differed from process afforded in the United States, New York courts will still enforce foreign judgments in those circumstances.  *See, e.g.*, *Standard Chartered Bank*, 957 N.Y.S.2d at 604-05 (enforcing judgment from Bahrain tribunal despite differences in process afforded to defendant); *Pariente v. Scott Meredith Literary Agency,*

*Inc.*, 771 F. Supp. 609, 616 (S.D.N.Y. 1991) ("[I]t is well established that mere divergence from American procedure does not render a foreign judgment unenforceable.").

In sum, Verizon has not cited to any evidence that raises "substantial doubt about the integrity of the rendering courts with respect to the judgment." Therefore, the Court declines to find, in its discretion, that the Judgment should not be enforced under N.Y. C.P.L.R. Section 5304(b)(7).

## VII.   Calculation of Statutory Adjustments

Finally, Verizon takes issue with the calculation of the statutory adjustments to the damages awarded in the Judgment. The Costa Rican Judgment awarded damages in the amount of USD 51,355,812, and post-judgment amounts for indexation, interest, and legal fees and costs. ECF No. 51-17 at 91-94. German Morales Martinez ("Morales") of Grant Thornton, Trejos Hermanos's expert, calculated those amounts as of October 15, 2021. ECF No. 51-12 (the "Grant Thornton Rep.") at 1. According to Morales, as of October 15, 2021, indexing brought the Judgment to USD 76,432,427, pre-judgment interest on net profits was USD 7,089,284, and statutory and legal fees and costs were USD 10,449,155. *Id.*

Verizon disputes the calculation of the post-judgment adjustments. *See* Opp. at 1 (attacking Trejos Hermanos for "trying to double the outrageous award through post-judgment additions"). Verizon argues that Morales "overstates the interest, indexation, and legal fees and costs [Trejos Hermanos] would be entitled to if the Judgment was recognized." *Id.* at 6-7.[5] Specifically, Verizon accuses Morales of flawed economic calculations, including

---

[5] Verizon also "objects to [Trejos Hermanos]'s use of an unsworn report at the summary judgment stage." Opp. at 6 n.3; *see also* ECF No. 57 at 2 (internal citations omitted). This objection is "mooted by plaintiff's submissions of [a] sworn declaration by [Morales] . . . swearing to the veracity of [his] statements." *Gache v. Town of Harrison*, 813 F. Supp. 1037, 1052 (S.D.N.Y. 1993); *see* ECF No. 62-2 (sworn declaration of Morales). The Court overrules Verizon's objection.

"ignor[ing] when the real interest rate is negative" and "measur[ing] the Consumer Price Index variance over the wrong periods."  *Id.* at 18-19.

Whatever Verizon's purported issues are with the calculations, Verizon's expert on Costa Rican law acknowledged that the methods used by Trejos Hermanos to calculate damages were "consistent with the methodology the Supreme Court of Costa Rica has instructed us to use."  Garro Tr. at 204:17-205:7.  In contrast, the expert retained by Verizon did not attempt to apply Costa Rican law in calculating the post-judgment adjustments.  *See* ECF No. 54-18 ("Wallace Tr.") at 17:1-18:9, 20:10-15 (Verizon's expert testifying that he calculated the post-judgment adjustments based on his "opinion about what the proper economic way of calculating interest is," rather than based on Costa Rican law).  Verizon's expert therefore did not calculate the post-judgment adjustments in accordance with the Judgment set forth by the Costa Rican court.

For example, although the experts for both parties agree that, under Costa Rican law, interest should be compounded using a 360-day period, Verizon's expert utilizes a 365-day period based on his economic opinion.  *See id.* at 21:16-22:6 ("In my opinion, converting an annual interest rate to a daily interest rate is not a legal issue.  It's simply a matter of how many days there are in a year, and there's either 365 or 366, depending on the year.  So if there's a [Costa Rican] case that says use 360 . . . it's not the proper calculation . . . economically, that's not appropriate.");  Reply 56.1 Statement ¶¶ 13.  Verizon also attacks Trejos Hermanos's methodology because it "ignores when the real interest rate is negative." Opp. at 18-19.  But Verizon's own expert confirmed that this methodology for post-judgment adjustments is consistent with Costa Rican law.  *See* Garro Tr. at 203:16-21 (agreeing that "when the term-adjusted real interest rate is negative, the Supreme Court [of Costa Rica] instructs you to put zero for that period");  *see also* Tr. at 33:8-34:6 (Verizon's attorney

identifying that Verizon's only issue with the statutory adjustments in the Grant Thornton report was that indexation and interest was "doubl[e] calculated," but that "Costa Rican legal authority allows for indexation and interest").[6]

For all of the reasons set forth above, the Court has determined that it will enforce the Judgment and the Judgment calls for post-judgment statutory adjustments to be calculated in accordance with Costa Rican law.  There is further no dispute that Morales calculated the adjustments based on Costa Rican law and therefore there is no issue of fact precluding summary judgment and enforcement of the Judgment in the manner reflected in the Grant Thornton report.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

(a) Trejos Hermanos's motion for summary judgment is GRANTED and the foreign Judgment for USD 51,355,812 shall be enforced;

(b) The statutory adjustments owed under the Judgment shall be calculated as of the date of this Order, and shall be calculated pursuant to the methodology of the Supreme Court of Justice;

(c) Plaintiff should submit the updated calculation to the Court within two weeks of this Order;

(d) The Court will direct the Clerk of Court to enter judgment for Trejos Hermanos in the final amount calculated two weeks following receipt of the updated calculation; and

---

[6] Verizon's argument that the statutory adjustments are overstated because the interest and indexation double count damages ignores that Grant Thornton subtracted the effects of inflation from net interest to avoid double counting.  ECF Nos. 51-7 (Exhibit I to the Garro Deposition), 51-12; Garro Tr. 183:2-205:7; *see also* Garro Tr. 176:15-177:2.

(e) Post-judgment interest at the federal statutory rate shall be imposed from the date

of entry until payment.

Dated: January 12, 2024
       New York, New York

                                                SO ORDERED.


                                                JENNIFER L. ROCHON
                                                United States District Judge